WICKLINE v. ALVIS, WARDEN.

(No. 5633—Decided March 5, 1957.)

Mr. James B. Albers, for petitioner.
Mr. William Saxbe, attorney general, and Mr. Louis H. Orkin, for respondent.

BRYANT, J. This is an action originating in this court seeking a writ of habeas corpus. It was brought by Dempsey Wickline, who in 1950 was found guilty of murder in the first degree by a jury in Lawrence County and, mercy having been recommended, was sentenced by the Common Pleas Court to life imprisonment in the Ohio Penitentiary. We are informed that upon appeal the conviction was affirmed by the Court of Appeals.

Wickline, in this proceeding, raises no question with respect to his trial. His sole objection is based upon his claim that illegal and incompetent testimony was heard by the grand jury which voted to indict him for murder in the first degree. Wick-

line says that he killed Mrs. Wickline's father after a quarrel. He says further that the hostility between himself and Mrs. Wickline, already intense, was made even more acute by the killing of his father-in-law and that Mrs. Wickline has since divorced him.

Wickline says he learned in 1956 for the first time that his wife appeared and testified before the grand jury which returned the indictment against him, and it is his claim that her testimony rendered null and void all subsequent proceedings in his case, including the indictment, the jury verdict and the sentence by the court. Hence, it is Wickline's claim that he is detained under a void sentence and is entitled to his release.

The objection raised by Wickline is based upon the common-law rule relating to the incompetency of one spouse to testify for or against the other. The rule is stated in 58 American Jurisprudence, 220, Witnesses, Section 375, as follows:

"It is an established rule of the common law, adopted for the protection of the institution of marriage, that neither party to a marriage may be a witness in favor of or against the other * * *."

In 42 Ohio Jurisprudence, 222, Witnesses, Section 216, it is said:

"At common law there were two important rules relating to the competency of the testimony of husband and wife. One referred to privileged communications in actions where they were competent witnesses. The other made the husband or wife wholly incompetent to testify in a case in which the other was a party, either for or against him or her. * * *"

The common-law rules have been modified in many important respects by laws passed by the Legislature of Ohio dealing with this subject. Our attention has been called to Sections 2317.01 and 2317.02, Revised Code, which provide:

Section 2317.01. "All persons are competent witnesses except those of unsound mind, and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

Section 2317.02. "The following persons shall not testify in certain respects:

``* * *

"(C) Husband or wife, concerning any communication made by one to the other, or an act done by either in the presence of the other, during coverture, unless the communication was made, or act done, in the known presence or hearing of a third person competent to be a witness; and such rule is the same if the marital relation has ceased to exist;

``* * *.''

With respect to the effect of the above civil evidence statutes, in 42 Ohio Jurisprudence, 229, Witnesses, Section 224, it is said:

"The Ohio statute provides that all persons are competent witnesses, with certain enumerated exceptions, which include husband and wife with respect to communications by one to the other or acts done by either in the presence of the other during coverture not made or done in the presence or hearing of a third person competent to be a witness. Under these provisions, husband and wife are held to be competent witnesses for and against each other except as to the matters therein specified. * * *''

Thus it will clearly appear that in civil cases the common-law rule has been materially changed by the enactment by the Legislature of the above-quoted sections of the chapter on evidence.

The grand jury inquest and voting of a murder indictment are in the field of criminal procedure and, hence, applicable criminal statutes must be considered. It will be recalled that in 1929, the Legislature enacted what was known as the Code of Criminal Procedure of Ohio (113 Ohio Laws, 123). This was a comprehensive codification of the law on this subject which covered the entire field of criminal procedure. A few years later, the Ohio Supreme Court decided that this Code of Criminal Procedure had pre-empted the entire field and that criminal procedure in Ohio, as a result, is entirely statutory, holding in the fifth paragraph of the syllabus of *State* v. *Whitmore*, 126 Ohio St., 381, 185 N. E., 547, as follows:

"5. An accused person has no common-law rights in Ohio, as there are neither common-law crimes nor common-law procedure in this state. (*Key* v. *Vattier*, 1 Ohio, 132; *Winn* v.

*State,* 10 Ohio, 345; *Allen* v. *State,* 10 Ohio St., 287; *Smith* v. *State,* 12 Ohio St., 466; *Mitchell* v. *State,* 42 Ohio St., 383; and *Johnson* v. *State,* 66 Ohio St., 59, approved and followed.)''

In the opinion in the *Whitmore case,* by Stephenson, J., at page 388, it is said:

''True, we have followed the common law in some of our statutory definitions of crimes and offenses, and we have adopted some of its criminal procedure. We have a right to, and do, recur to it for the light it may give in the construction of these statutes, but not for any right it affords to one accused of crime, for it affords none.''

See, also, *Municipal Court of Toledo* v. *State, ex rel. Platter,* 126 Ohio St., 103, 184 N. E., 1, in which the first paragraph of the syllabus is as follows:

''1. Criminal procedure in this state is regulated entirely by statute, and the state has thus created its system of criminal law covering questions of crime and penalties, and has provided its own definitions and procedure.''

Two sections in the Code of Criminal Procedure have a direct bearing on the question of evidence in criminal cases. They are Section 2945.41, Revised Code, making the rules of evidence in civil cases, where applicable, govern in all criminal cases, and Section 2945.42, Revised Code, making the husband and wife competent witnesses on behalf of each other in all criminal prosecutions and competent witnesses to testify against each other in a few specifically named cases.

Section 2945.41, Revised Code, provides as follows:

''The rules of evidence in civil causes, where applicable, govern in all criminal causes.''

Section 2945.42, Revised Code, provides in part as follows:

''* * * Husband and wife are competent witnesses to testify in behalf of each other in all criminal prosecutions, and to testify against each other in all actions, prosecutions, and proceedings for personal injury of either by the other, bigamy, or failure to provide for, neglect of, or cruelty to their children under sixteen years of age. A wife may testify against her husband in a prosecution under Section 3113.01 or 3113.03 of the Revised Code for neglect or abandonment of such wife. * * * Husband or wife shall not testify concerning a communication

made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness, or in case of personal injury by either the husband or wife to the other, or bigamy, or failure to provide for, or neglect or cruelty of either to their children under sixteen years of age, or neglect or abandonment of such wife under such sections. * * *''

From a consideration of the statutes set forth above, it is plain that if Mrs. Wickline had appeared and testified before the grand jury for—that is, on behalf of—her husband, no complaint could be made by Wickline, because of express language of Section 2945.42, Revised Code. But Wickline says that he and his wife were on bad terms before the killing of her father took place and that afterwards she was hostile and embittered. There was some hearsay testimony concerning a statement by a relative to Wickline as to the damaging testimony given by Mrs. Wickline before the grand jury. Just how this relative broke the secrecy of the grand jury and was able from his own eyes and ears to tell what Mrs. Wickline said to the grand jury is not brought out.

The only other evidence seeking to prove that Mrs. Wickline testified against Wickline at the grand jury inquest consists of two documents, one a certificate by the clerk of the Common Pleas Court that Mrs. Wickline was present at the grand jury inquest and was paid one dollar as a witness fee and the other an affidavit by the man who was prosecuting attorney at the time of the indictment and trial of Wickline, to the effect that Mrs. Wickline testified, that her testimony was material and that without her testimony there might have been no indictment. As neither the clerk of courts nor his deputy are entitled to be with the grand jury when it is in closed session, the clerk's certificate is merely some evidence she was present and received a witness fee.

The prosecuting attorney likewise is sworn to secrecy and that is just as binding after the end of his term as at any other time. His duty was to retire during discussion and voting, and his affidavit is mostly his conclusions.

No transcript of the testimony of Mrs. Wickline or any of

the other witnesses was presented. The proceedings before the grand jury are secret, and for us to attempt to determine just what part Mrs. Wickline played would not only be next to impossible, but, further, it would serve no useful purpose whatsoever.

We must keep in mind that this is a petition for a writ of habeas corpus, that it is a collateral attack on a judgment in another court which was possessed of full jurisdiction to try cases of this type. It follows that for Wickline to prevail he must show that the judgment complained of was utterly void. It is not enough to show what may have been an error.

Perhaps the most direct answer to the question sought to be raised by Wickline is that a defendant is not permitted to inquire into the amount, quantity or weight of the evidence or other proceedings leading up to the return of an indictment. That was true at and immediately after the filing of the indictment with the clerk of courts. The indictment simply was not subject to challenge by Wickline on this ground at the time of the trial. It follows that this objection cannot now be raised in a proceeding for a writ of habeas corpus, which, as we have pointed out, is a collateral attack.

Proceedings of the grand jury are not a trial but are more in the nature of an inquest. There are no parties, and no defendant has a right to appear before the grand jury; and, if he does appear, it is only upon permission granted and he then appears as a witness, not a defendant, and he has no right to take his attorney along with him.

Chapter 2939, Revised Code, regulates the calling, conduct and duties of grand juries. Section 2939.06, Revised Code, providing the oath to be administered to grand jurors, provides a clue to the wide range open to grand jurors in determining whether to indict. It provides in part:

" '* * * you will diligently inquire, and true presentment make of all such matters and things as shall be given you in charge or otherwise come to your knowledge * * * but in all your presentments you shall present the truth, the whole truth, and nothing but the truth, according to the best of your skill and understanding. [']"

The question raised by Wickline is not new in Ohio. In the

case of *Turk* v. *State*, 7 Ohio, pt. 2, 240, decided in 1836, it was held that an indictment could not be invalidated by showing alleged misconduct of one of the grand jurors, nor could there be an inquiry made as to the grounds upon which twelve of the fifteen jurors acted in voting an indictment nor could a plea be maintained seeking to impeach the conduct of a member of the grand jury or contradicting the journal of records.

The second and third paragraphs of the syllabus in the *Turk case, supra,* are as follows:

"2. If twelve grand jurors agree in finding an indictment, it can not be invalidated by showing misconduct of one of the fifteen jurors, nor can inquiry be made upon what grounds anyone of the twelve jurors concurred in the finding.

"3. A plea, impeaching the conduct of a grand jury, and alleging facts in contradiction to the journal of records can not be maintained."

At page 242, Wood, J., in course of the opinion, said in part as follows:

"The first plea * * * avers fourteen grand jurors only were at any time present to inquire, find, or present the indictment. This averment is not, however, sustained by the record; the record shows that fifteen grand jurors were sworn, and found and presented this indictment. * * *

"The second plea states that George Parsons, one of the grand jury, was not present at the finding of the indictment, did not hear any witness, nor examine nor inquire touching any allegation of the indictment, but concurred without any proof or inquest whatever. The oath of a grand juror requires him to 'diligently inquire and true presentment make of all such matters and things as shall be given' him 'in charge, *or otherwise come to*' his '*knowledge,* touching his present service,' etc. *The grand inquest is not usually composed of men learned in law. They are controlled by no technical rules of evidence. They must act according to the dictates of their own judgment and discretion, and whether a fact be proved by a witness, or disclosed by a fellow-juror, or from their own knowledge exists, it is their duty to present it to the court. They ought not to act rashly, nor without sufficient ground to believe, as the accusatory tribunal, in the existence of the fact they present.* * * *

*The court neither keeps their consciences nor can control them
in finding facts, when intending honestly to discharge their duty.
\* \* \* But aside from this, can these matters be reached in this
way by plea in bar to the indictment? If so, it might also be
alleged in bar that the grand jury had not sufficient testimony,
or admitted that which was improper, and our discretion and
judgment usurp the place of theirs, when they are a co-ordinate,
it is true, but, so far as facts are concerned, an independent
branch of the criminal tribunals of the country.*

"There is, however, another and still more fatal objection
to these pleas. They contradict the records; and it is a prin-
ciple of law, familiar with all, that a record is proved by itself,
and is of such validity that it can not be proved per notiora, and
no fact can be averred against it. The record shows a grand
jury found the bill of indictment on their oaths. The intend-
ment and legal effect and presumption is, that it was found on
proper evidence, with due deliberation, and by the concurrence
of twelve of their number. \* \* \*" (Emphasis added in part.)

By a later decision, the Ohio Supreme Court made it clear
that the requirement of the statute that the grand jury be com-
posed of fifteen qualified persons is mandatory and any less
than that number could not return a valid indictment. See
*Doyle* v. *State*, 17 Ohio, 222, decided in 1848.

In the case of *Lindsey* v. *State*, 69 Ohio St., 215, 69 N. E.,
126, the defendant claimed a constitutional right of his had
been violated in that he was compelled to testify before the
grand jury which indicted him for murder, whereupon he filed
a plea in abatement to the indictment, which was overruled.
The overruling was affirmed by the Supreme Court. While the
court disposed of the matter in a large part upon the technical
insufficiency of the plea, the opinion by Spear, J., at page 223
says, in part:

"But, aside from the foregoing, how stands the case? The
proposition of the plaintiff in error is that the indictment should
have been held bad because a constitutional right of the defend-
ant had been violated. That is, the grand jury and the prose-
cuting officer should be rebuked for improper practice without
regard to whether the defendant had been thereby prejudiced
or not. We are not commending the practice of subpoenaing

persons suspected of crime as witnesses before a grand jury which has been summoned to inquire respecting that crime; indeed we do not hesitate to characterize it as improper practice. But the question is, what effect that mere fact ought to have in a test of an indictment otherwise regular and valid? It is of importance to note that this plea does not show that the defendant testified against himself, or that he testified to any fact material to the inquiry, or that the testimony he gave was of consequence in the deliberations of the jury, or that there was not other testimony before the jury upon which the indictment might have been properly found; on the contrary, for all that appears in this plea, there was abundant competent evidence, by competent witnesses before the jury, and the jury in fact found the indictment wholly upon such other competent testimony. * * *''

The grand jury in its inquest of crimes and offenses acts merely as the formal and constitutional accuser of crime and those it believes to be probably guilty thereof and does not exercise a judicial function, it was held in *State, ex rel. Doerfler, Pros. Atty., v. Price, Atty. Gen.,* 101 Ohio St., 50, 128 N. E., 173, decided in 1920. The first paragraph of the syllabus is as follows:

"The grand jury in its inquest of crimes and offenses, and in its finding and presentation of indictments to the Court of Common Pleas, does not exercise a judicial function. It only acts as the formal and constitutional accuser of crime and those it believes to be probably guilty thereof.''

In the course of the opinion, Wannamaker, J., at page 61, wrote:

"The relations of the grand jury and the Common Pleas Court are identical to those of the prosecuting attorney and the Probate Court in misdemeanor cases, and those of private individuals before any magistrate. The prosecuting attorney and the private citizen make their formal charges by affidavit. Surely there is no judicial function involved in finding and presenting the charge in the one court by indictment, in the case of felony, any more than there is in presenting it by affidavit, in another court, in the case of misdemeanor; * * *.''

We believe it is clear that courts in Ohio lack the power

even in a direct action, and much less in a collateral attack such as this, to inquire into the legality or sufficiency of the evidence on which an indictment is based. In 31 American Law Reports, 1479, the question before us is discussed, and the Ohio rule is the rule followed in an overwhelming majority of the states which had passed on the question.

On page 1479, *supra*, the majority rule is stated to be as follows:

"In the majority of jurisdictions the rule obtains that the court will not inquire into the legality or sufficiency of the evidence on which an indictment is based, even if it is averred that the indictment was found without any legal evidence being produced before the grand jury. This view is based, by the courts maintaining it, on one or more of the following reasons: That the grand jury is a judicial body whose finding is conclusive as against a motion to quash; that the secrecy of grand jury proceedings will not be invaded; and that a statute prescribing grounds for the quashal of indictments, and not mentioning insufficiency of the evidence, is conclusive."

For the reasons above set forth, the petition for a writ of habeas corpus is denied and Wickline is remanded to the custody of the respondent, Ralph W. Alvis, Warden of the Ohio Penitentiary, for further execution of the sentence of life imprisonment.

*Petitioner remanded to custody.*

PETREE, P. J., and MILLER, J., concur.