THE STATE OF NEVADA, APPELLANT, v. W. MARK EDDINGTON AND J. MACARTHUR WRIGHT, RESPONDENTS.

Nos. 5363 and 5364

September 25, 1967          432 P.2d 87

[Rehearing as to Wright denied October 11, 1967; denied as to Eddington October 13, 1967]

*Harvey Dickerson,* Attorney General; *Daniel R. Walsh,* Chief Deputy Attorney General; *Carl F. Martillaro,* Special Deputy Attorney General, of Carson City, for Appellant.

*Morse and Graves,* of Las Vegas, and *Robert W. Hughes,* of Salt Lake City, Utah, for Respondent W. Mark Eddington.

*Vargas, Dillon, Bartlett and Dixon,* of Reno, for Respondent J. MacArthur Wright.

## O P I N I O N

By the Court, THOMPSON, C. J.:

The issue presented by this consolidated appeal is the legal sufficiency of the evidence upon which a grand jury acted in returning two indictments charging embezzlement. One (Case No. 5363) alleged that Eddington and Frisby embezzled $100,000 from the People's Investment Company. The other (Case No. 5364) charges that Eddington, Wright, and Frisby embezzled $200,000 from the Mark Twain Life Insurance Company. Eddington and Wright challenged the sufficiency of the evidence through petitions for habeas corpus. Shelby v. District Court, 82 Nev. 204, 414 P.2d 942 (1966). Frisby did not interpose a challenge. The district court ruled that the evidence was not sufficient to warrant holding either defendant for trial and discharged each pursuant to his application for habeas corpus. We affirm that ruling in Case No. 5363, but reverse in Case No. 5364.

The quality and persuasive force of evidence needed to support an indictment are expressed by NRS 172.260(2) and NRS 172.280. The first commands that "none but legal evidence, * * * to the exclusion of hearsay or secondary evidence," shall be received. The second suggests that grand jurors should indict "when all the evidence before them, taken together, is such as, in their judgment, would, if unexplained and uncontradicted, warrant a conviction by the trial jury."

It is not useful to relate the mass of legal evidence presented to the grand jury. In the Mark Twain case there was ample to justify a belief that, absent explanation or contradiction, a trial jury could lawfully convict the defendants. Accordingly, we shall recite only an abbreviated version of the record simply to show that statutory standards were met. As to the People's Investment matter we shall briefly note wherein the showing was deficient.

People's and Mark Twain are domestic corporations. Each was chartered in 1963. The aim of Mark Twain was to qualify and do business as a stock life insurance company. People's was organized to conduct the sale of shares of stock in Mark Twain. In October, 1963 the two companies made an agreement giving People's authority to manage Mark Twain during

the sale of the common stock to be offered by Mark Twain. Eddington was the vice-president and a director of Mark Twain, and the president and a director of People's. Wright was the secretary-treasurer, resident agent, director, and counsel for Mark Twain, and counsel for People's. Frisby was the president and a director of Mark Twain, and the secretary-treasurer and director of People's. Eddington and Frisby were a majority of the Board of Directors of People's and, with Wright, composed the "executive committee" of Mark Twain.

Enough of the common stock of Mark Twain was sold by October, 1964 to cause the State to issue Mark Twain a license to do business as a stock life insurance company. The function of People's under the stock sales agreement had been discharged. A majority of the Board of Mark Twain believed that People's had ceased all operations.

Mark Twain commenced selling insurance in January, 1965. From then through September, 1965, more than $200,000 left its treasury without authority from the Board of Directors. Most of that amount was paid out as "insurance commissions" to People's ($107,000), and to Eddington ($34,421.22) and Frisby ($32,000), individually. The charter of People's did not grant it authority to solicit or sell insurance, nor was an agent's license issued to it for that purpose. Although the minutes of Mark Twain ambiguously reflect that its "executive committee" (Eddington, Wright, and Frisby) had approved an arrangement with People's, and with Eddington and Frisby individually, to sell Mark Twain insurance on a commission basis, the majority of the Board of Directors of Mark Twain assert that such arrangement was never presented to them for consideration and approval, and that the minutes prepared by Wright so indicating, are false. In any event, the record shows that the sums expended by Mark Twain for "insurance commissions" substantially exceeded the percentages authorized by the executive committee, assuming its authority to act for Mark Twain. The record also shows payments totalling $15,-000 to Wright as counsel fees, and almost $43,000 in "travel expense," each without approval of the Board. Indeed, the majority of the Board was kept in the dark about these expenditures. When they inquired, the members of the executive committee would engage in a filibuster and refuse to respond candidly. Even physical violence was threatened. The stability of Mark Twain deteriorated and the company was placed in receivership.

These facts justify the belief held by the grand jury that substantial funds of Mark Twain were fraudulently appropriated

by Eddington, Frisby, and Wright. The elements of embezzlement [NRS 205.300] are present. A fiduciary relationship existed between Mark Twain and those charged with defalcations. Cf. Carter v. State, 79 Nev. 89, 378 P.2d 876 (1963). Money was used for purposes other than those for which entrusted, thus permitting an inference of fraudulent intent. State v. Trolson, 21 Nev. 419, 32 P. 930 (1893). A prima facie case was made. Whether it will persuade at trial where the defendants will be present with counsel, and afforded an opportunity to explain their conduct, is another matter, wholly irrelevant to the issue at hand.

Although Eddington and Wright suggest that the grand jury should have heard from them before returning indictments, the grand jury was not required to do so. NRS 172.270. Indeed, had they been granted an audience, the grand jury would not have been required to accept their explanations, but could indict notwithstanding them. In this respect the grand jury function is not unlike that of the justice of the peace upon a preliminary examination. [See State v. Fuchs, 78 Nev. 63, 368 P.2d 869 (1962), where we held that the evidence at the preliminary hearing was sufficient to justify holding the accused to answer in the district court, notwithstanding her written exculpatory statement received in evidence.]

The indictment charging embezzlement from People's Investment is not supported by sufficient evidence to warrant trial. Although the record reflects substantial expenditures without explanation, there is nothing to show that the expenditures were unauthorized. Of course, the money flow from Mark Twain to People's and out, may well be competent evidence at the trial of the Mark Twain case.

Other contentions respecting the two indictments have been considered and are without substance. The order of the district court granting habeas corpus in the Mark Twain Case No. 5364 is reversed, and the cause remanded to the district court for trial. The order granting habeas corpus in the People's Investment Case No. 5363 is affirmed.

COLLINS and ZENOFF, JJ., concur.