THE STATE OF NEVADA, APPELLANT, *v.* FRIEDRICH A. VON BRINCKEN, RESPONDENT.

No. 6150

November 18, 1970                              476 P.2d 733

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Kathleen M. Wall,* Deputy District Attorney, Washoe County, for Appellant.

*Donald W. Gilfillan,* of Incline Village, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

By grand jury indictment, Friedrich A. von Brincken was charged with involuntary manslaughter for the death of his wife, Hope. Von Brincken petitioned for a writ of habeas corpus on the alleged failure of the state to establish probable cause that he brought about the death of his wife. The trial court granted the writ and the state appeals.

All of the testimony and evidence presented to the grand jury was consistent. Von Brincken and his wife dined at the Tahoe Racquet Club restaurant in Incline Village at Lake Tahoe about 7:00 p.m. on March 20, 1969. The night was snowy, icy and brisk. Following their customary habits, they drank extensively before, during and after dinner. They left the restaurant about 10:15 p.m. and approximately 30 minutes

thereafter Hope was found dead on a street near their home, her body badly crushed. There were numerous abrasions and lacerations on her body, many ribs on both sides were fractured, her pelvis was badly broken and her liver and spleen were torn. A doctor testified that she had met considerable force, that the injuries could not have been caused from a mere fall and that the injuries came from a crushing-type impact.

Her body was still warm when found. The blood alcohol content was .274 which, considering that .150 determines intoxication, established that she was extremely intoxicated. When von Brincken's blood alcohol test was taken at about three o'clock the next morning, after a lapse of time allowing for dissipation of alcohol in the body, the test showed his alcohol content to be above the intoxication level.

At no time during their hours in the club were there any indications of discord between the two. Within a few minutes after leaving the club they were seen in their parked car talking amiably in front of another restaurant just a short distance away from the club. At the inquest their three children, ages 16, 18 and 20, testified that their mother and father were very compatible and that they all enjoyed a happy family relationship. The mother and father occupied separate bedrooms but only because Mrs. von Brincken had a chronic back ailment for several years, was a restless sleeper and read books avidly into the long hours of the night. Von Brincken's statement to the Deputy District Attorney who, in turn, testified before the grand jury, corroborated that he and his wife were compatible and had no discord.

When they left the second restaurant they traveled down Mays Boulevard, a fairly popular street considering that Incline Village on a winter night is not heavily traveled. The total travel time between the tennis club and their home is a relative few moments.

At 10:45 p.m. a woman driving down Mays Boulevard saw a body lying toward the left of center in the road. She drove to her home and called friends whom she had just left and asked them to call the police. She then went back to the scene but the police had already arrived because another witness had evidently spotted the body just after she did and he had called the police. This was at 10:50 p.m.

A police officer went to the von Brincken home nearby. In the driveway he saw and examined the Cadillac automobile that the von Brinckens had been driving that evening. The engine was still warm. The police officer testified that there was a dent in the left headlight rim, with a fiber adhering to it.

Analysis of the fiber by the police did not connect it with the deceased, however. One of von Brincken's sons testified that he examined the Cadillac on March 22 at the police substation where it had been impounded and also saw this dent, as well as another on the other front fender.

The police officer also noted a mink stole identified as having been worn by Hope that evening was caught in the door on the passenger side, hanging outside of the car with bits of gravel along the bottom end of it. On the ground were her checkbook and a sport jacket belonging to von Brincken. The officer also noted that the von Brincken's Buick automobile was in the driveway but that it had not been driven.

There was no evidence of a fight in the home. The police officer found von Brincken in his bedroom about 1:00 a.m. The officer awakened von Brincken, who in the view of the officer was obviously still drunk.

In his various statements von Brincken related that he did not notice that his wife was not in the car with him when he was driving home, but that when he got there he remembered that for some reason his key did not open the back door. He stated that he therefore climbed through the kitchen window, opened the locked door from the inside and went to bed. At all times he claimed a complete memory blackout from the time they left the tennis club until he arrived at the house.

The trial judged ruled that the evidence was sufficient to prove that the death of Mrs. von Brincken was by the criminal agency of another but that there was not probable cause to hold Mr. von Brincken for the crime.

The question for our review is simply whether or not it was error for the trial court to hold that the state had failed to establish probable cause to charge von Brincken with the crime.

1. To repeat what this court has said many times, the sole function of this court is to determine whether all of the evidence received at the preliminary hearing (and this would apply to grand jury proceedings as well) establishes probable cause to believe that an offense has been committed and that defendant committed it. Lamb v. Holsten, 85 Nev. 566, 459 P.2d 771 (1969). The purpose of the preliminary proceedings is to weed out groundless or unsupported charges of grave offenses and to relieve the accused of the degradation and the expense of a criminal trial. Many unjustifiable prosecutions are stopped at that point, where the lack of probable cause is clearly disclosed. People v. Elliot, 354 P.2d 225, 229 (Cal. 1960).

2. While the state does not have the burden of negating all inferences as to whether or not Mr. von Brincken killed his wife, it does have the responsibility of establishing facts that will lead to the reasonable inference that he did. An inference is a deduction which the reason of the jury (trier of the facts) makes from the facts proved, without an express direction of law to that effect. While the inference drawn need not be a necessary inference, it still remains that the inference must be reasonable, not unreasonable or so remote as to be unwarranted. Probable cause requires that there shall be more evidence for guilt than against. It must be supported by evidence which inclines the mind to believe, though there may be room for doubt. The state of facts must be such as would lead a man of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion. Ex parte Kline, 71 Nev. 124, 282 P.2d 367 (1955).

In past cases certain facts linked the accused with the crime, such as the fingerprints on the criminal agency in McKenna v. Sheriff, 85 Nev. 524, 458 P.2d 358 (1969); the identification of the accused as being at the scene of the crime in an argument with the deceased, Howard v. Sheriff, 83 Nev. 150, 425 P.2d 596 (1967); footsteps leading from the desert to a pickup truck, evidence of a person lying in wait at the pickup truck, footsteps returning to the desert, the finding of a shotgun at the original place in the desert and the tracing of the shotgun to the accused, Hanley v. State, 85 Nev. 154, 451 P.2d 852, 854 (1969); the motivation of jealousy plus the fact of the accused being alone with the deceased for long hours, together with bruises on the body indicating death was caused by fierce beating, Miner v. Lamb, 86 Nev. 54, 464 P.2d 451 (1970); but in Lamb v. Holsten, supra, we held that because descriptions of the accused's clothing and his identity were uncertain the trial court properly granted a writ of habeas corpus. See also Azbill v. State, 84 Nev. 345, 350, 440 P.2d 1014 (1968).

The facts that we have are clear. Hope von Brincken was in the automobile on the passenger's side on the front seat with von Brincken. We do not know how she got to the pavement. She either got out voluntarily, fell out, or was pushed out. Neither the roadway nor any testimony adds enough to reasonably point to Mr. von Brincken. The mink stole hanging from the doorway is of no special significance. Though it

was Hope's stole and she was wearing it earlier, this shows no more than that in whatever way she got out of the automobile the mink stole did not go with her. That she was struck by an automobile shortly thereafter, is a reasonable probability. Von Brincken's statement to the Deputy District Attorney and two other statements he gave to the police officers were that he had no recollection of any of the events, including his wife's absence from the car when he got home.

Because of the testimony of the police officer and the von Brincken youth before the grand jury, it is reasonably inferable that Hope von Brincken was struck by Mr. von Brincken's Cadillac. Without this testimony, the grand jury's conclusion would have been based on mere speculation, and, of course, the trial court's granting of the writ of habeas corpus would have been proper. With it, though, the evidence presented satisfies the minimum requirements for binding a defendant over for trial. From our examination of the record we conclude Mr. von Brincken may be made to stand trial, though we express no view as to the adequacy of this evidence to support a conviction. It is meager to say the least.

3. Because this case can be easily disposed of under the foregoing analysis we find the procedural point raised by respondent in his motion to dismiss the appeal to be of no consequence.

Reversed.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.