MICHAEL MILLER, Appellant, v. SHERIFF,
CARSON CITY, NEVADA, Respondent.

No. 11594

April 6, 1979                    592 P.2d 952

[Rehearing denied June 14, 1979]

*Norman Y. Herring,* Nevada State Public Defender, and
*Michael Ross,* Deputy Public Defender, Carson City, for
Appellant.

*Richard H. Bryan,* Attorney General, and *Edwin E. Taylor,
Jr.,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

By the Court, Manoukian, J.:

Michael Miller, an inmate at the Northern Nevada Correctional Center, was charged, and ordered to stand trial for the

felonious possession of marijuana (NRS 453.336). Thereafter, he filed a petition for a writ of habeas corpus, challenging the sufficiency of the evidence adduced at the preliminary examination. Habeas was denied and on appeal Miller contends we are compelled to reverse. We disagree.

A correctional officer at the institution testified that, *inter alia,* while on duty on August 8, 1978, he observed appellant "ducking down" in a dormitory restroom and contemporaneously heard a noise which sounded like "something being thrown in a garbage can." The officer further testified that he immediately opened the restroom door, observed appellant rising from a crouched position next to the garbage can whereupon Miller hurriedly exited down the hallway. Noting that no one else was in the bathroom, the officer searched a "galvanized steel 30 gallon garbage can" and retrieved a "vitamin bottle" which was located on top of the assorted trash. The contents of the bottle included assorted pills, hand rolled cigarettes and a balloon. A chemist's report subsequently confirmed that there were 21 cigarettes containing marijuana, and that the balloon contained marijuana as well.

The officer later confronted Miller in appellant's dormitory. The dormitory is accessible only through the restroom in which the marijuana was found. His suspicion was further aroused when he asked appellant for his identification card, and he denied knowing where it was, although the officer observed it lying on his locker, in "plain open view." Miller's locker was later inventoried, and a bottle identical to that found in the restroom trash can was found among his property. In five years, the officer had never seen a bottle of that type at the correctional facility.

Although entry to and exit from the restroom was through a connecting door to one of the facility's dormitories which housed numerous inmates, here, the totality of the circumstances, including appellant's being alone in the restroom, his crouching and ducking, the contemporaneous noise heard by the officer, appellant's hasty exit from the restroom, the finding of the similar bottle unlike any other observed by the officer in his five years at the institution, in our view, satisfies the requisite probable cause test delineated in NRS 171.206. *Cf.* Glispy v. Sheriff, 89 Nev. 221, 510 P.2d 623 (1973) where, in a similar institutional setting, we held that appellant's access to a common area alleged crime scene was not exclusive and the evidence did not meet the probable cause test to warrant a trial on the basis of constructive possession. Here, unlike *Glispy,* the magistrate was entitled to conclude that Miller exercised

dominion and control over the contraband. See Alsup v. State, 87 Nev. 500, 489 P.2d 679 (1971).

The evidence presented meets the degree of proof required for binding a defendant over for trial. See State v. von Brincken, 86 Nev. 769, 476 P.2d 733 (1970). "[W]e are not now concerned with the prospect that the evidence presently in the record may, by itself, be insufficient to sustain a conviction." McDonald v. Sheriff, 89 Nev. 326, 512 P.2d 774 (1973).

The order of the trial court is affirmed.

MOWBRAY, C. J., and THOMPSON, J., concur.

GUNDERSON, J., with whom BATJER, J., agrees, dissenting:

My colleague Batjer and I respectfully adhere to the result reached by the court's original opinion, which was recalled on three signatures, by *sua sponte* order. That opinion declared: "Our opinion in *Glispey* is controlling here." As Justice Batjer and I said in LaPena v. State, 92 Nev. 1, 14, 544 P.2d 1187, 1195 (1976): "[N]othing plus nothing plus nothing is nothing."

Assuming appellant made a noise throwing something into the restroom garbage can, we do not find this at all inculpatory; for trash receptacles are provided so that unwanted items may be thrown into them. As the majority opinion shows, the "vitamin bottle" was not alone in the trash receptacle, but reposed there amidst other trash. Indeed, if appellant threw something away, as the noise arguably suggested he did, this seems exculpatory rather than inculpatory. The noisy act does not suggest the surreptitious hiding of a "stash." Rather, it suggests casual disposal of trash.

Nor can we see how any reasonable inference of guilt follows from the supposed fact that appellant "crouched" near the trash can, following the noise just discussed. So far as we know, one does not crouch either to throw or place something inside a trash can. In any event, it certainly does not require a more pronounced crouch to throw marijuana into a trash can than to dispose of other material in like manner. If appellant crouched, it seems to us a more likely inference that he had been tying his shoes, as appellant's counsel suggested.

Next, we do not see how an inference of guilt can be based on appellant being alone in the dormitory restroom. To us, the reasonable inference is that his fellow prisoners did not feel nature's call when he did.

Again, we have difficulty seeing how guilt may be inferred from the fact that appellant "hurriedly exited down the hallway." As the majority note, that was the only way to get back to appellant's dormitory. The supposed fact that appellant

walked "hurriedly" does not impress us as inculpatory. In the first place, to stigmatize his walking as "hurried" strikes us to be as conclusory as saying he walked furtively. Still, assuming *arguendo* that appellant hurried, what does this prove? The record does not indicate the restroom is a pleasant place to loiter. For any number of plausible reasons which may be imagined—one of which appellant undoubtedly will proffer, if forced to trial—appellant may have desired to "hurry" back to his dormitory.

Next, we do not understand how appellant's ownership of the marijuana is proved by showing that, later in the day, he denied knowing his identification card's whereabouts. Confined as he was, appellant obviously could not hope to conceal his identity from an officer who had served at the facility for five years. At most, appellant's statement suggests he was being surly—but hardly evidences possession of marijuana.

Finally, we have inspected the "vitamin bottle" which contained the marijuana in question. It is a white plastic bottle with a white top. There may be millions of identical bottles. The majority do not explain how, merely because the correction officer had not previously seen one, ownership of such a bottle may be considered admissible and probative of guilt. This court heretofore held owning a car of a particular make and color constitutes no inculpatory evidence whatever that the owner committed a burglary in which such a car was used. O'Donnell v. Sheriff, 91 Nev. 754, 542 P.2d 733 (1975). How, then, may it be said that owning one plastic vitamin bottle proves criminal possession of another and different one?[1]

We respectfully submit public money should not be expended on a prosecution which is foredoomed to failure, through a clear lack of evidence.

---

[1]Furthermore, from the record, it cannot be determined whether the bottle taken from appellant's locker is, in fact, even similar to the one discovered in the trash can. The second bottle was neither admitted into evidence, nor is it in the possession of the prison's evidence officer. If the second bottle still exists, the prosecution advises, it may be possessed by a correctional officer who is no longer in state employ, having recently pleaded guilty to making a false report to a public officer.