CLYDE BIGLIERI, APPELLANT, *v.* WASHOE COUNTY GRAND JURY REPORT DATED MARCH 15, 1976, RESPONDENT.

No. 10707

October 26, 1979                                        601 P.2d 703

*Steven L. Pevar,* American Civil Liberties Union, Denver, Colorado, and *Wallace D. Stephens,* Reno, for Appellant.

*Calvin R. X. Dunlap,* District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, MOWBRAY, C. J.:

Clyde Biglieri appeals from the district court's dismissal of his petition to expunge various portions of the Washoe County Grand Jury Report, disseminated on March 15, 1976. Since we agree that those portions of the report were issued in excess of the grand jury's lawful authority under NRS 172.175(3)[1], we reverse.

---

[1]NRS 172.175(3) provides in pertinent part:

"No report issued pursuant to this section shall single out any person or persons which directly or by innuendo, imputation or otherwise accuses such person or persons of a wrongdoing which if true would constitute an indictable offense unless the report is accompanied by a presentment or indictment of such person or persons."

Recently, this Court had occasion to review a similar petition for expungement brought by Joseph Conforte, one of the principal targets of the March 15th investigative report. *See* In re Washoe County Grand Jury Report, 95 Nev. 121, 590 P.2d 622 (1979). At that time, we upheld the constitutionality of NRS 172.175(2) which empowers the grand jury to investigate and to report on matters pertaining to the public welfare, morals, and safety of the community; but we also found that these reportorial powers are not without limit. *Id.* at 124, 590 P.2d at 624. For example, a grand jury, when issuing an investigative report, may not accuse a named individual, either directly or indirectly, of an indictable offense without returning an indictment or presentment. *Id.* at 125, 590 P.2d at 625; NRS 172.175(3).

In the instant case, appellant concedes that our opinion in *Washoe County* effectively disposes of his constitutional attacks on the March 15th report. He insists, however, that portions of that report, in effect, accuse him of what amounts to criminal activity without giving him the opportunity to respond to those charges in a judicial forum.[2] We agree.

Though we have fully detailed the factual background of the March 15th report in our *Washoe County* opinion, a brief summary is in order here.

In July, 1974, the Washoe County Grand Jury commenced an investigation which focused upon a transaction commonly referred to as the Conforte Land Transaction. The scope of the investigation expanded considerably, ultimately involving members of the Reno and Sparks City Councils, the Washoe County Commission, and the Washoe Convention Authority. The grand jury publicly disseminated its report on March 15, 1976.

No presentments or indictments accompanied the report. The grand jury emphasized that "nothing said in this report is intended to accuse, imply, or create an innuendo that any person has committed a criminal offense." Despite this caveat, the grand jury sharply criticized various named public officials for allegedly breaching their public trust. These named officials,

---

[2]Though appellant initially petitioned the district court for expungement of the entire grand jury report, he presently seeks expungement only of those portions which single him out "directly or by innuendo, imputation, or otherwise," of possible criminal wrongdoing. We note, in this regard, that appellant does not have standing to challenge the portions of the report dealing with other individuals. In re Washoe County Grand Jury Report, 95 Nev. at 123, 590 P.2d at 624.

according to the grand jury, had acted in their official capacities on matters of public interest without disclosing their conflicting personal interests in those matters.

Appellant Biglieri, then a Reno City Councilman, was one of the officials singled out for criticism in the report. The grand jury concluded that appellant had performed his official duties with respect to the Conforte Land Transaction and to a related city council vote on a proposed room tax increase while having a personal stake in the outcome of those matters. The grand jury based its findings on the following allegations: appellant's real estate firm had handled the Conforte Land Transaction and, as a result, appellant had received a large commission from Conforte; appellant was aware that a substantial portion of the revenues raised pursuant to the room tax increase would be used by the city to purchase a parcel of land from Conforte; appellant knew that Conforte was in a position to reap major profits from this sale; appellant had received a substantial campaign contribution from Conforte; appellant was urged by Conforte to vote in favor of the proposed room tax increase; appellant had, in fact, cast the tie-breaking vote in favor of the tax increase; and, most significantly, appellant knew he had a chance of receiving extensive Conforte business in connection with the future sale and development of the parcel of land retained by Conforte. Of course, since no indictment was returned, the truth of these allegations cannot be ascertained.

The question of the validity of these portions of the March 15th report, unaccompanied by indictment or presentment, is now before this Court.

The reportorial function of the grand jury, serving to enlighten the community on matters of public importance, occupies an important position in our democratic form of government. We must be on our guard, however, to distinguish between the grand jury's power to report upon public affairs and its power to accuse of public offenses. In re Ormsby Grand Jury, 74 Nev. 80, 322 P.2d 1099 (1958). When singling out an individual through accusations of possible criminal conduct, the grand jury acts as an inquisitor; in its inquisitorial role, the grand jury must either indict or be silent. *Id.;* NRS 172.175(3). The principle behind this limitation is quite simply that:

> [A] man should not be made subject to quasi official accusation of misconduct which he cannot answer in an authoritative forum; that in making such accusation the grand jury is exceeding its reportorial function and is proceeding to impose the punishment of reprimand. . . .

In re Ormsby Grand Jury, 74 Nev. at 83, 322 P.2d at 1100; *see also* Nevada State Judiciary Comm., 1973 Legislative Session, Minutes at 376 (April 5, 1973) (commenting on the underlying intent of NRS 172.175(3)). In other words, it is one thing for the grand jury to find that official acts or practices, although not expressly forbidden by law, are opposed to the public trust and should be exposed to public scrutiny; it is quite another thing, however, for the grand jury "to adjudge such conduct to be morally wrong or to be misconduct which is censurable or actionable." In re Ormsby Grand Jury, 74 Nev. at 85–86, 322 P.2d at 1102.

The dividing line between proper public criticism and unlawful accusations of possible criminal conduct is often difficult to discern, but it is one which must be drawn. The learned district judge below, relying heavily on the fact that Nevada's criminal conflict of interest laws did not take effect until after the dissemination of the grand jury's report and on the grand jury's expressed opinion that "[n]othing said in this report is intended to accuse, imply, or create an innuendo that any person has committed a criminal offense," concluded that the report did not accuse appellant of any indictable offenses. We cannot agree. While NRS 245.075, the criminal conflict of interest statute, did not take effect until 1977, we note that NRS 197.110(2), enacted in 1911, makes it a gross misdemeanor for a public officer to "[b]e beneficially interested, directly or indirectly, in any contract, sale, lease or purchase which may be made by, through or under supervision of such officer, in whole or in part . . . ." We find that the grand jury's account of appellant's conduct with respect to the Conforte Land Transaction and the subsequent city council vote on the proposed room tax increase falls squarely within the purview of this statute.

The grand jury, in effect, has accused appellant of official misconduct. If the grand jury had "probable cause" to believe the truth of its allegations relating to appellant's conduct, then the *only* course consistent with its duty was to return a presentment or indictment, thereby allowing appellant his day in court to test the truth or falsity of these charges. NRS 172.155(1). If, on the other hand, the grand jury was not satisfied with the accuracy of its information concerning appellant's conduct, then it could report only in general terms on matters pertaining to the public welfare. *See* NRS 172.175(2) and (3). What the grand jury was not free to do was to suggest that appellant was guilty of misconduct and then avoid the consequences of its findings by refusing to indict.

Moreover, this Court is not bound by the grand jury's own assertion that nothing in its report was intended to accuse appellant of criminal activity. If the grand jury could determine, free from judicial review, the legal effect of its report in such a fashion, it would have unlimited opportunity to include allegations of indictable offenses in violation of NRS 172.175(3) while, at the same time, immunizing its report from attack by the bald statement that those accusations did not amount to wrongdoing. *See generally* In re Washoe County Grand Jury Report, *supra*. We decline to grant the grand jury such unfettered power: the grand jury may not transform its inquiry, in which only the most minimal safeguards are accorded the subjects of its investigations, *see* NRS 172.145, into a secret trial culminating in the published condemnation of an individual.

For the above reasons, we reverse the judgment of the district court and remand the cause with directions to deny respondent's motion for summary judgment and to enter partial summary judgment for appellant, expunging P.26, L.7, through P.27, L.16, inclusive, from the March 15, 1976 report of the Washoe County Grand Jury.

THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.

BATJER, J., concurring:

The majority opinion sets forth the accusations and allegations against Biglieri contained in the grand jury report. Not one of these allegations could be legitimately used to support an indictment or information for violation of NRS 197.110(2), applying Nevada's probable cause standard. *See e.g.* Franklin v. State, 89 Nev. 382, 513 P.2d 1252 (1973); State v. von Brincken, 86 Nev. 769, 476 P.2d 733 (1970).

I reluctantly must agree with the majority, however, that there could be an innuendo or imputation of such a violation. Since it appears to be the intent of the Nevada Legislature to render the grand jury impotent in its reporting function, I have no alternative but to concur in the result reached by the majority and conclude that NRS 172.175(3) mandates reversal in this case.