IN THE MATTER OF THE REPORT OF
ORMSBY COUNTY GRAND JURY

APPEAL OF WILLIAM B. BYRNE AND
WILLIAM D. EMBRY

No. 4043

March 18, 1958.                                322 P.2d 1099.

*Harry E. Claiborne*, of Las Vegas, for Appellants.

*Cameron M. Batjer*, District Attorney of Ormsby County and *William D. Crowell*, of Carson City, for Ormsby County Grand Jury.

*Harvey Dickerson*, Attorney General, of Carson City, amicus curiæ.

# OPINION

By the Court, MERRILL, J.:

Appellants are assemblymen from Clark County. By this proceeding they seek to expunge certain portions of a grand jury report. This appeal is taken from order of the court below denying the petition to expunge. The attorney general as amicus curiae has filed a brief in support of the position of appellants.

In 1956 the grand jury of Ormsby County (which includes Carson City, the state capital) undertook an investigation of the state office of surveyor general. Its report was filed June 20, 1956, with the district judge of the first judicial district which includes Ormsby County. The report was received and the grand jury discharged. This proceeding was then brought in the district court. The report is divided into four parts.

1. "Background," in which the state land laws and statutory procedures for private acquisition of public lands are discussed and the reasons for recent activities in land purchases are set forth.

2. "Findings," in which are set forth the facts relating to land purchases through the office of surveyor general in which certain state officers or members of their families participated. Among the transactions so factually recited are the participation of appellants, as members of the state legislature from Clark County, in legislation affecting sales of public lands; and the purchase of public land by appellant Byrne and his wife, in which purchase appellant Embry had assisted, anticipating compensation for his services. The land involved, at the time of purchase and for some time prior thereto, had been placed under use by the state in connection with its industrial school of correction for boys. Through oversight state title had not been perfected and the land had not been withdrawn from public sale.

3. "Conclusions," in which the grand jury in effect finds appellants guilty of conduct improper in a state officer and proceeds to administer censure. This portion of the report includes statements to the effect that appellants have "violated the moral obligation of their oath, office, or position"; that their action was "most reprehensible and evidence of a complete disregard of their public trust and the public welfare," entailed "unconscionable disregard of moral obligation" and was "hereby condemned."

4. "Recommendations," by which further study of the problems of land sales is referred to the legislature; legal action is suggested to determine the respective rights of the state and the Byrnes to the industrial school land; and impeachment proceedings against the surveyor general are recommended to the legislature.

As to inquisitorial powers of the grand jury NRS 172.300 provides in part, "1. The grand jury must inquire * * * (c) into the willful and corrupt misconduct in office of public officers of every description within the county. 2. The grand jury may inquire into

any and all matters affecting the morals, health and general welfare of the inhabitants of the county, * * *."

No issue is raised upon this appeal as to the authority of the Ormsby County grand jury, under this statute, to investigate the conduct of a state officer located within the county. Appellants do not seek to expunge the entire report. Their attack is directed to the "Conclusions." The final conclusion reads, "That we have no present criminal recourse in any of the transactions herein reported." Appellants contend, since the grand jury was unable to indict, that it had no right to deal with the issue of guilt or to administer censure and that in making report it should have confined itself to its findings of fact and recommendations.

The overwhelming weight of authority is to this effect. The principle is that a man should not be made subject to quasi-official accusation of misconduct which he cannot answer in an authoritative forum; that in making such accusation the grand jury is exceeding its reportorial function and is proceeding to impose the punishment of reprimand based upon secret ex parte proceedings in which the person punished has not been afforded the opportunity of formal open defense. State Ex Rel. Brautigam v. Interim Report of Grand Jury, Fla., 93 So.2d 99; Ex Parte Burns, 261 Ala. 217, 73 So.2d 912; Shoemaker v. State, 123 Utah 458, 260 P.2d 521; State Ex Rel. Strong v. District Court, 216 Minn. 345, 12 N.W.2d 776; State v. Bramlett, 166 S.C. 323, 164 S.E. 873; In Re Grand Jury Report, 204 Wis. 409, 235 N.W. 789; In Re Report of Grand Jury, 152 Md. 616, 137 A. 370; See: Jones v. District Court, 41 Nev. 523, 173 P. 885–888; Ex Parte Faulkner, 221 Ark. 37, 251 S.W.2d 822; Dession & Cohen, Inquisitorial Functions of Grand Juries, 41 Yale Law Journal 687, 705.

In support of the "conclusions" of the grand jury report the strongest case presented is In Re Presentment by Camden County Grand Jury, 10 N.J. 23, 89 A.2d 416. In that case the grand jury had investigated jail conditions and irregularities in the practices of jail officials. A lengthy report was filed which contained charges that the

sheriff "had failed miserably in his public trust" and merited "the strongest kind of moral indictment. Moral only because the laws of the state fail to define clearly his chargeable responsibilities and fix legal penalties * * *." Denial of a motion to expunge was upheld by the New Jersey Supreme Court. It first held that the "report" of the grand jury was in truth a "presentment." It noted that grand jury reports are unknown to New Jersey law. In large part the opinion by Chief Justice Vanderbilt constitutes a scholarly examination into the nature of the grand jury presentment as known to New Jersey law. It concludes that the New Jersey presentment of today is a presentment as to public affairs: a type of presentment which "differs from the obsolete criminal presentment in that it does not lead to a trial but merely to a notice to the offender." 89 A.2d 423.

That case is distinguishable for the reason that the laws of this state differ from those of New Jersey. Here the grand jury *reports* upon matters of public affairs. "Presentment" is expressly perpetuated with reference to public *offenses* and otherwise receives no statutory recognition. NRS 172.220 provides, "The grand jury must inquire into *all public offenses* committed and *triable* within the jurisdiction of the court, and present them to the court, either by presentment or indictment." NRS 172.230 provides, "A presentment is an informal statement in writing, by the grand jury, representing to the court that a *public offense* has been committed, which is *triable* within the district, and that there is reasonable ground for believing that a particular individual, named or described, has committed it." (Italics supplied in both sections.) Under Nevada law a presentment of public offense contemplates *trial* and not merely notice to the offender.

In support of the grand jury report it is pointed out, by counsel for the grand jury, that under Nevada law the grand jury function is not confined to matters of crime; that its inquisitorial concern is with "all matters affecting the morals, health and general welfare" of the

people. Parus v. District Court, 42 Nev. 229, 239, 174 P. 706, 709, 4 A.L.R. 140 is cited, where this court stated, "The grand jury, whatever its ancient functions may have been, has under modern law become an institution endowed largely with inquisitorial powers. Not only does it have to do with criminal investigations, but by statutory provision it may inquire into the affairs, conduct, and regulation of public offices, boards and commissions. The public health and public welfare, as well as the moral atmosphere of the community, are matters of proper inquiry for our modern grand jury." Contending for a corresponding power to *report,* counsel refer to Jones v. People, 101 App.Div. 55, 92 N.Y.S. 275, 276, 22 A.L.R. 1356, where it is stated, "We may assume that these powers are conferred for some purpose. Official inquiry intends either official action or official report."

There is no question here, however, as to limits upon the inquisitorial powers of the Nevada grand jury in "matters affecting the morals, health and general welfare" of the people. Nor can it be doubted that there is power to report the results of such investigations and that the grand jury's reportorial power, in the interest of an enlightened public, is, upon public affairs, coextensive with its inquisitorial power. Likewise it must be recognized that the power to report carries with it the power to err and to injure by factual error. In this respect the authority of grand juries in this state is greater than is the case in many other states.

There are limits to its reportorial power, however. Such power to *report upon public affairs* must be distinguished from the power to *accuse of public offense,* which by statute is accomplished by indictment or presentment. The grand jury has no power, where the law is silent, to declare certain acts to be public offenses through the fixing of standards in accordance with its ethical or moral views.

It is one thing to find that official acts, omissions or practices, although not expressly forbidden by law, are opposed to the public interest and should not continue.

It is quite another thing to adjudge such conduct to be morally wrong or to be misconduct which is censurable or actionable. In State Ex Rel. Brautigam v. Interim Report of Grand Jury, Fla., 93 S.2d 99, 103, it is said, "If in the course of their investigation of general public affairs they [grand juries] find that neglect or ineptitude is responsible for an undesirable condition, the public welfare dictates that they may make their report even though it incidentally points to an official or officials as responsible therefor. But, as stated in In Re Report of Grand Jury, Utah 1953, 260 P.2d 521, 527, 'While much good can result from a grand jury calling attention to conditions which they find to be in need of remedying, when the report goes further and impugns the motives and conduct of public officials, the possibility of damaging the reputation of blameless public officials overshadows the good which might result from the filing of such a report.' "

The fact must be recognized that the closed-door processes of grand juries are not designed to permit a final determination to be fairly and justly reached in those areas where the rights of persons or the issue of wrongdoing may be involved. Those are areas where the open, adversary process of justice is the Anglo-American tradition. Any power of judgment which the grand jury may possess is essentially tentative. In matters of public offense it is contemplated that a public trial be had in order that the truth may be justly ascertained. Even in matters of public affairs it is contemplated that a testing of the merits of findings and recommendations be had by some authoritative agency or by public opinion. The grand jury has no power itself to carry out its recommendations.

In our view this imposes no undue limits upon grand jury authority to inquire and report in the public interest. We seek an enlightened public in matters of public affairs, in the administration of public offices and the business of government. The grand jury's power of factual enlightenment remains unimpaired, as does its

usefulness through its ability to draw upon the experience of its members in making recommendations in the public interest. It is not its function, however, to enlighten the public as to the moral or ethical standards of the day. If public enlightenment upon such matters be needed it must be sought from other sources. Nor is there grand jury authority to render final judgment of personal wrongdoing or to administer upon a person the sentence of condemnation or censure.

The motion to expunge should have been granted. As offensive portions of the report appellants have specified paragraphs 10 through 22 of "Conclusions." The first sentence of paragraph 16 reads, "That Mr. Byrne was well aware in the summer of 1955 that he had purchased land used by and necessary to the industrial school." Paragraph 17 reads, "That Mr. and Mrs. Byrne have materially benefitted at the expense of the state and the public interest." These are matters of fact rather than of opinion or conclusion and properly belong in the "Findings" portion of the report (which, we again note, this court is not reviewing and with the truth of which we are not concerned). As such, the quoted factual statements should not be expunged. The remaining matter specified by appellants should be expunged.

Reversed and remanded with instructions that the conclusions of the grand jury specified in the paragraph next above be expunged from its report.

BADT, C. J., and EATHER, J., concur.