IN THE MATTER OF THE REPORT OF THE WASHOE COUNTY GRAND JURY; APPEAL OF WILLIAM GREGORY.

No. 4375

June 5, 1961                              362 P.2d 447

*Ernest S. Brown,* of Reno, for Appellant.

*William J. Raggio,* District Attorney of Washoe County, for Washoe County Grand Jury.

## OPINION

By the Court, MARSHALL, D. J.:

This is an appeal from a judgment and decision of the trial court denying appellant's amended petition and motion to expunge the Washoe County grand jury report insofar as it pertains to the appellant. The gist of the proceedings is such that the appellant contends by the filing of its third report consisting of very numerous topics pertaining to the office of the chief of police that he was charged by the grand jury with the commission of a crime or crimes without authority in the law and therefore requests that the complete record of the doings of the said appellant be expunged and the report stricken from the records.

The pertinent facts are that on June 18, 1959 William Gregory was appointed chief of police of the city of Reno by the Reno City Council. On June 22, 1960 the Washoe County grand jury returned to the court a written report of its investigation of the Reno police department in which the grand jury criticized the chief

of police, William Gregory, found him incompetent to administer the department and recommended that he be replaced by a person who was a qualified administrator. Thereafter, on June 28, 1960 the appellant was dismissed by the city council of the city of Reno.

The entire inquiry involves the construction of NRS 172.300, which reads as follows:

"1. The grand jury must inquire into:

"(a) The case of every person imprisoned in the jail of the county, on a criminal charge, and not indicted.

"(b) The condition and management of the public prisons within the county.

"(c) The willful and corrupt misconduct in office of public officers of every description within the county.

"2. The grand jury may inquire into any and all matters affecting the morals, health and general welfare of the inhabitants of the county, or of any administrative division thereof, or of any township, incorporated city, irrigation district or town therein."

The extensive briefs that have been filed by the parties hereto would indicate that the case for either side requires this court to reexamine the case of In Re Ormsby Grand Jury, 74 Nev. 80, 322 P.2d 1099, wherein the court held that where a grand jury is unable to indict for alleged misconduct it has no right to deal with the issue of guilt or to administer censure, and in making its report should confine itself to finding the facts and making recommendations in the public interest. In that case the above-enumerated duties of the grand jury were stated, and in that case the appellants sought to expunge the conclusions. The final conclusion of the Ormsby County grand jury case states that, "We have no present criminal recourse in any of the transactions herein reported." It was contended that the grand jury had no right to deal with the issue of guilt or to administer censure, and that in making a report it should have confined itself to its findings of fact and recommendations.

The court speaking through Justice Merrill in the Ormsby County grand jury case states:

"There are limits to its reportorial power, however. Such power to *report upon public affairs* must be distinguished from the power to *accuse of public offense,* which by statute is accomplished by indictment or presentment. The grand jury has no power, where the law is silent, to declare certain acts to be public offenses through the fixing of standards in accordance with its ethical or moral views."

In the present case it is the contention of the appellant that the entire report of the grand jury filed June 22, 1960 should be expunged; so that leaves for consideration whether or not the Washoe County grand jury exceeded its prerogative in filing the report so referred to. There are many instances in the report which could readily indicate the grand jury's displeasure with the manner in which the appellant conducted his office. The report in Section II recommended as follows that suitable qualifications should be adopted for selection of a police chief:

"Basic qualifications should be established for the position of Chief of Police. As a suggestion, to be eligible, a person should:

"(1) Have reached age thirty (30); and

"(2) Have graduated from high school or equivalent; and

"(3a) Have held a command position with a law enforcement agency of comparable or larger size for a minimum period of two (2) years, with at least five (5) years total service in law enforcement; or

"(3b) Have graduated from the F.B.I. Academy or a training program of comparable stature; or

"(3c) Have served as an agent with the Federal Bureau of Investigation, or comparable agency, for a minimum period of five (5) years; * * *"

And these were followed by further recommendations of the grand jury. They are nothing more than standards which are recommended for the appointment of a chief of police.

And the report refers to instances of members of the press having been invited to attend secret raids of

the vice squad and to attend the capture of a wanted criminal outside Nevada; and that the press corps had been allowed to view all reports even before the same were transmitted to the prosecuting agency. Such practice was stated to be antagonistic to certain provisions of the Municipal Code of Reno.

Under another topic, *political interference,* reference was made to councilmen having attempted to exert influence on Chief Gregory. The report states in part:

"In one instance instructions apparently came from Chief Gregory not to arrest a prostitute, and this instruction was requested by a councilman (Cowen)."

Viewing the report in its entirety and in the light of the decision of the Ormsby County grand jury case, supra, it is difficult to find where or in what paragraph of the report the appellant has been accused of any criminal act. Certainly on the basis of the report of the grand jury there is no indication from the record that an act of prostitution had been committed within the presence of or even the knowledge of the chief which would warrant an arrest, since to make an arrest for an offense of this type it would seem that more than a mere request not to arrest somebody for prostitution would be necessary to constitute a crime. And again the recommendations to the city council of Reno to improve their standards by adopting some form of standard to be used in the appointment of a chief cannot be said to be charging the chief with any crime, and the entire report certainly fails to indicate that the chief had engaged in any willful or corrupt misconduct in office referred to in NRS 172.300. In fact, the report only indicates that the grand jury was inquiring into matters concerning the morals, health, and general welfare of the inhabitants of the city of Reno.

Counsel filed a supplementary opinion wherein he referred to the case of Wood v. Hughes, 9 N.Y.2d 144, 212 N.Y.S.2d 37, wherein the Court of Appeals of New York held that there was no authority for the filing of a report by a grand jury on alleged mismanagement in public office where investigation of the charges of misconduct on the part of the public officers uncovered no evidence

warranting indictment. A careful analysis of the case would indicate that the statutes of New York upon which the decision was rendered do not contain the provisions of section 2 of NRS 172.300 referring to an inquiry of matters affecting the *morals, health, and general welfare of the inhabitants of the county*, etc. In spite of the lack of statutory authority in New York to investigate into such matters the three very strong dissenting opinions compel us to the view that had such a provision as section 2 of NRS 172.300 been incorporated in the laws of New York that the weight of the dissenting opinions would have compelled a different result in the New York case. We believe that section 2 of NRS 172.300 gives to the grand jury a much broader power than is indicated in the New York statute where the only provision that the grand jury was empowered to inquire into was "willful and corrupt misconduct in office by public officers." Code Cr.Proc.N.Y., sec. 253.

Respondent contends that no violation of the rules enunciated in the Ormsby County grand jury case have been violated by the filing of the report in the instant case. In this we concur upon the ground that there is nothing stated in the report that would constitute an accusation of anything except inefficiency and incompetency.

It is apparent from the voluminous opinion of the lower court that the remarks sought to be expunged were legitimate as being the result of a legitimate inquiry into matters affecting *the morals, health, and general welfare* of the public.

Affirmed.

PIKE and McNAMEE, JJ., concur.

BADT, C. J., being absent on account of illness, the Governor commissioned Honorable GEORGE E. MARSHALL, Judge of the Eighth Judicial District Court, to sit in his place.