UNITED STATES of America, Appellee,

v.

**William E. DOULIN,**
**Defendant-Appellant.**

**Nos. 1036–7, Dockets 76–1070, 76–1102.**

United States Court of Appeals,
Second Circuit.

Argued May 14, 1976.

Decided May 14, 1976.

Opinion June 21, 1976.

Certiorari Denied Oct. 18, 1976.
See 97 S.Ct. 256.

Bart M. Schwartz, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York, and Robert J. Jossen and Lawrence B. Pedowitz, Asst. U. S. Attys., New York City, on the brief), for appellee.

Herald Price Fahringer, Buffalo, N. Y. (Seymour Greenblatt, Newburgh, N. Y., Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N. Y., on the brief), for defendant-appellant.

Before LUMBARD and TIMBERS, Circuit Judges, and JON O. NEWMAN, District Judge.*

LUMBARD, Circuit Judge:

William Doulin appeals from his conviction on four counts of an eight count indict-

---

* Sitting by designation.

ment charging him with perjury before two federal grand juries, 18 U.S.C. § 1623. Judgment was entered in the Southern District on January 23, 1976 following a one and one-half week jury trial; and, on that same date, appellant was sentenced by Judge Ward to concurrent terms of two and one-half years imprisonment, the first six months to be spent in confinement and the remainder to be spent on probation.

Doulin has not, on this appeal, denied the falsity of his statements. Rather, he has argued that his perjurious testimony was immaterial to the proper inquiry of the grand juries and that, in any event, the questions which formed the predicate for the various counts of his indictment were multiplicitous. In addition, Doulin contends that he was prejudiced by the erroneous admission of hearsay evidence. Having heard oral argument and read the briefs, we affirmed appellant's conviction in open court on May 14, 1976. This opinion is in elaboration of that decision.

On August 22, 1972, a grand jury was empaneled and sworn in the Southern District to conduct an investigation into various alleged violations of federal law resulting from the purported attempt by local officials in Orange and adjacent counties to interfere with the enforcement of local gambling laws.[1] During the course of its inquiry, William Doulin, chairman of the Republican Committee of Orange County, was named as someone who, in exchange for illicit payoffs, had provided protection to illegal gambling operations in Orange County. The grand jury heard testimony that Doulin received hundreds of dollars per week from professional gamblers who also paid for his annual vacation in Florida. Doulin was furthermore identified as having interceded on behalf of one Richard Monell in connection with the latter's prosecution and sentence for assault in the New York State courts.

The thrust of the evidence before the grand jury suggested that appellant had been given approximately $1,500 by Mrs. Grant, Monell's grandmother and a lifelong friend of Doulin, to do what he could to insure that Monell would receive only a probationary sentence. As shown at trial, appellant then contacted Abraham Weissman, an assistant district attorney with higher aspirations, and indicated to him that his career would be advanced if he cooperated by recommending to the state trial judge that Monell be released without a jail sentence. Weissman agreed and the desired sentence was imposed.[2]

In June 1973, Doulin was summoned to appear before the August 22, 1972 grand jury and provide his version of the above events. Essentially, he denied any improper behavior either with respect to enforcement of the gambling laws or with respect to Monell's criminal case. On February 12, 1975, appellant was called before a second grand jury which had been empaneled in January 1975 to continue the investigation into official corruption and also to inquire into the possibility of perjury having been committed before the first grand jury. Here too, Doulin denied any misconduct as he was questioned about both local gambling operations and the Monell prosecution.

Finally, on June 26, 1975, Doulin was charged in an eight count indictment with having made false statements before both federal grand juries in violation of 18 U.S.C. § 1623, counts one to three relating to the first grand jury and counts four to eight dealing with his testimony before the second.

At trial, the government relied primarily upon the testimony of Florence Hall, Richard Monell's girl friend, to establish the

1. 18 U.S.C. § 1511 makes it a federal crime for two or more persons to conspire illegally to influence or obstruct the enforcement of local gambling laws.

2. The deal between Doulin and Weissman actually pertained to Monell's resentencing. His original sentence of 2½ years imprisonment had been vacated due to the trial court's erroneous reliance upon an already outdated section of the New York Penal Code rather than on the then recently revised provision.

falsehood of Doulin's testimony before the grand juries. Hall related in considerable detail her conversations with Mrs. Grant during which Mrs. Grant spoke of her efforts to secure the assistance of the appellant. In one such discussion, Mrs. Grant told Hall that Doulin "needed some money" to give someone else in order to secure the sentence of probation for Monell. Hall also admitted that she had served as intermediary, delivering reassuring messages from Mrs. Grant to Monell that aid would be forthcoming from Doulin. Hall furthermore indicated that she had accompanied Mrs. Grant to the latter's bank in Newburgh where Mrs. Grant withdrew $1,400. The two women then drove to Doulin's funeral parlor (he was an undertaker by profession) and Hall waited in the car while Mrs. Grant went inside with the envelope of money. In addition, Hall testified to one occasion on which she visited Monell in jail while Mrs. Grant and Doulin were meeting outside; on being introduced to Hall afterwards, Doulin remarked that she must be "the girlfriend of the bad boy."

Hall's testimony was corroborated and amplified by Monell and Norman Shapiro, Monell's Legal Aid lawyer, both of whom repeated statements of Mrs. Grant that she had arranged with "Bill" Doulin for her grandson's probation. Shapiro also recounted a statement by Doulin that he had "put in a good word, or done a favor . . . for a grandson of an old dear friend."

The defense case consisted of Mrs. Grant's insistence that she had never contacted, let alone bribed, Doulin in an effort to influence Monell's sentence. Appellant, who took the stand in his own behalf, made similar protestations of innocence, specifically denying that he had known that Abraham Weissman, the assistant district attorney who handled Monell's sentencing, was interested in becoming the Republican candidate for District Attorney of Orange County. The defense moreover called a series of well-known public officials to vouch for Doulin's character and integrity.

In rebuttal, the prosecution introduced a letter from Weissman to Doulin in which Weissman expressed his appreciation for Doulin's efforts to get the incumbent district attorney to leave office, thereby opening the position for Weissman's presumed accession.

On the basis of the foregoing evidence, Doulin was convicted on four of the seven counts submitted to the jury, one count having been dismissed by the district judge prior to trial. Appellant's principal contention on appeal is that the government did not show, as it must under 18 U.S.C. § 1623, that any false statements which he made with regard to his unlawful interference in Monell's prosecution were material to the grand jury's investigation into a possible corrupt connection between local officials and illegal gambling interests. We are unpersuaded by Doulin's argument which misconceives both the nature and the purpose of the materiality requirement in perjury prosecutions.

It is of course true that no grand jury, including those which examined appellant, is granted an unlimited charter. Its powers are ultimately "subject to the supervision of a judge," *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). On the other hand, a realistic appraisal of the grand jury's task compels recognition of the fact that, at least at the outset, the eventual scope and direction of its inquiry is often only hazily perceived and tentatively defined. *Blair v. United States*, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979 (1919). The grand jury is an investigative not an adjudicative body and, as such, must be permitted within limits to pursue any leads which may be uncovered. See *United States v. Stone*, 429 F.2d 138, 140 (2d Cir. 1970).

It is in keeping with the grand jury's historic function as a shield against arbitrary accusations to call before it persons suspected of criminal activity, so that the investigation can be complete. This is true whether the grand jury embarks upon an inquiry focused upon individuals suspected of wrongdoing, or is directed at persons suspected of no misconduct but who may be able to provide *links in a*

*chain of evidence* relating to criminal conduct of others, or is centered upon broader problems of concern to society. It is entirely appropriate—indeed imperative—to summon individuals who may be able to illuminate the shadowy precincts of corruption and crime. [Emphasis added.]

*United States v. Mandujano,* —— U.S. ——, 96 S.Ct. 1768, 1775, 48 L.Ed.2d 212 (1976).

The Congressional decision to restrict the coverage of § 1623 to "false material declaration[s]" thus reflects an accommodation of two competing values: It is designed to give the grand jury the latitude necessary to perform its salutary role while at the same time safeguarding the rights of the individual against state encroachment. To effectuate these twin goals, the now well-settled test of materiality, first expressed by this court in *Carroll v. United States,* 16 F.2d 951, 953 (2d Cir.), cert. denied, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880 (1927), is whether the perjurious testimony has "a natural effect or tendency to influence, impede or dissuade the grand jury from pursuing its investigation." A conviction under § 1623 may therefore be sustained upon a showing that a truthful answer to the grand jury's question could conceivably have furthered its inquiry by providing "an evidentiary stone in the larger edifice." *United States v. Mancuso,* 485 F.2d 275 (2d Cir. 1973).[3]

■ Judged against this standard, the materiality of Doulin's perjurious testimony is apparent. We agree with the government's observation that, given the position of public trust which Doulin occupied, his successful intervention in the Monell case surely sheds some light on his ability and inclination to interfere in other cases, per-

haps more closely related to illegal gambling. Truthful responses would also have aided the grand jury in learning who was involved in the effort to influence sentencing, and identifying such persons may well have furthered the gambling inquiry.

■ Appellant's claim that neither federal grand jury before which he appeared had authority to indict him for the substantive offenses about which he has now been found guilty of lying is, even if true, beside the point. The grand jury's duty and indeed responsibility to inquire is not coterminous with its power to indict. See *United States v. Mancuso,* 485 F.2d at 283; *United States v. Cohn,* 452 F.2d 881 (2d Cir. 1971), cert. denied, 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1971). Nor does materiality hinge upon whether this "propensity" evidence would be admissible at trial. See *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

We thus see no reason to disturb the district court's finding, reached after a mid-trial hearing at which Judge Ward heard the testimony of one member of each of the grand juries involved, that Doulin's perjurious declarations concerning the Monell case were material to the investigation into alleged interference by public officials with enforcement of the local gambling laws. Moreover, it was entirely proper for Judge Ward to decide the question of materiality as a matter of law rather than submitting it as a factual issue for the jury's determination. *Sinclair v. United States,* 279 U.S. 263, 298–9, 49 S.Ct. 268, 73 L.Ed. 692 (1929); *United States v. McFarland,* 371 F.2d 701, 703 n. 3 (2d Cir. 1966), cert. denied, 387 U.S. 906, 87 S.Ct. 1689, 18 L.Ed.2d 624 (1967).

3. We recognize that in *United States v. Freedman,* 445 F.2d 1220, 1227 (2d Cir. 1971), and *United States v. Birrell,* 470 F.2d 113, 115 n. 1 (2d Cir. 1972), the government was required to prove that further fruitful investigation *would* have occurred had a truthful answer been given in order to carry its burden of establishing materiality. As we noted in *Mancuso,* however, neither of these decisions involved perju-

ry before a grand jury, 485 F.2d at 281 n. 17, and the question of whether the *Freedman* rule would be extended to violations of 18 U.S.C. § 1623 remains an open one. We do not believe this is an appropriate case to resolve that issue since the materiality of Doulin's false declarations is plain whether the "could have" or "would have" test is applied.

Doulin's contention that the questions asked him by the grand juries were repetitious and the indictment fatally multiplicitous is similarly without merit. While we agree in principle with the Ninth Circuit's statement that "[s]ingle punishment for a single lie should suffice," *Gebhard v. United States*, 422 F.2d 281, 290 (9th Cir. 1970), it is clear from an examination of the instant indictment that each query posed to appellant sought information and that proof of each falsehood necessitated the establishment of different facts. See *United States v. Tyrone*, 451 F.2d 16 (9th Cir. 1971); *United States v. Andrews*, 370 F.Supp. 365 (D.Conn.1974). For example, the perjury charged in Count Six concerned Doulin's discussions with Mrs. Grant whereas that charged in Count Seven dealt primarily with his conversations with Weissman. In situations such as this where the grand jury is focusing its attention upon a series of related acts occurring over a period of time, it is inevitable that its questions will overlap to a certain degree. But such overlapping alone is not enough to require that the allegedly false responses of the witness be consolidated into a single perjury count where, as here, each of the critical inquiries was directed to a separate facet of the overall transaction being investigated.[4]

Appellant's final point is that the testimony of Florence Hall, Monell and Norman Shapiro regarding the conversations which each of them had with Mrs. Grant was hearsay and should have been excluded. We disagree. Mrs. Grant's out of court statements that arrangements had been and were being made with Doulin for her grandson's probationary sentence were properly before the jury as the statements of a co-conspirator made in the course of the scheme to subvert the orderly processes of justice. *United States v. Ruggiero*, 472 F.2d 599, 607 (2d Cir.), cert. denied, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973). Such statements are admissible if the trial judge finds independent evidence that the defendant participated in a conspiracy with the declarant. *United States v. Geaney*, 417 F.2d 1116 (2d Cir. 1969), cert. denied, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970). Doulin's admission to Shapiro that he had put in a good word for Monell as a favor to Mrs. Grant, his meeting with Mrs. Grant and comment to Hall that she must be the girlfriend of the "bad boy," his close friendship with Mrs. Grant, and Mrs. Grant's trip to his funeral parlor with $1,400 in cash provided a reasonable basis for Judge Ward to make a finding of conspiracy. See id. at 1120–21. It is of no import that a conspiracy was not charged in the indictment. *United States v. Ruggiero, supra* at 607.

Affirmed.

---

4. Doulin has also challenged his conviction upon the ground that the Assistant United States Attorney conducting the investigation never advised him of his right to recant his earlier perjurious testimony, 18 U.S.C. § 1623(d). However, in *United States v. Camporeale*, 515 F.2d 184, 189 (2d Cir. 1975), we explicitly held that the government had no such duty to warn a grand jury witness.