IN THE MATTER OF THE REPORT OF THE WASHOE COUNTY GRAND JURY; APPEAL OF JOSEPH CONFORTE.

No. 9862

February 16, 1979                    590 P.2d 622

*Stanley H. Brown* and *James Belford Brown*, Reno, for Appellant.

*Richard Bryan*, Attorney General, Carson City; *Calvin R. X. Dunlap*, District Attorney, and *John L. Conner*, Deputy District Attorney, Washoe County, for Respondent.

122

## OPINION

By the Court, MANOUKIAN, J.:

In July, 1974, the Washoe County Grand Jury commenced an investigation which focused upon a matter commonly referred to as the Conforte Land Transaction wherein northern Nevada brothel owner and appellant herein, Joseph Conforte, had purchased for development several hundred acres of ranch

land located in the City of Sparks. Conforte subsequently sold a portion of the property to the Washoe County Convention Authority for use as a golf course. Development of the golf course at county expense greatly enhanced the value of the property retained by appellant.

The scope of the investigation expanded measurably, ultimately involving members of both the then Reno and Sparks City Councils, Washoe County Commission, Washoe Convention Authority and various former public officials.

The grand jury publicly disseminated its report March 15, 1976 prior to review by the District Court. Among other things and in detail, it related that Conforte had established "substantial contacts" with a number of the public officials who were directly involved in the land transaction and other matters related thereto; that he contributed financially to their political campaigns and/or extended to them other "favors or gratuities;" that the courtesies had been extended to four of the five members of the Convention Authority who were concurrently members of the Reno and Sparks City Councils, and the Washoe County Commission, the governmental entities responsible for a substantial majority of all decisions affecting the public's welfare in Washoe County.

The report further disclosed a 1962 felony-extortion conviction and 1963 federal felony-income tax evasion conviction from appellant's criminal history; related his apparent affiliation with a number of ex-felons; referred to his ownership of the "Mustang" brothel in Storey County, and its effects on the inhabitants of adjoining Washoe County; mentioned that establishment's claimed deleterious health effects on Washoe County; and even made reference to an alleged attempt by appellant to "establish close contacts with public officials in Libby, Montana" with an apparent intent on his part of "expanding business operations into that area."

No presentments or indictments accompanied the report, and in our view, none was legally returnable, a conclusion expressly mentioned by the grand jury, in which we concur.

Appellant took exception to the report, contending that he was prominently and specifically identified in portions of it. Consequently, he petitioned the district court to expunge not only those portions referring to him, but the entire report, including portions referring to other individuals. We note that appellant lacks standing respecting the latter challenge.

The trial court expunged only a segment of the report which referred to Conforte's refusal to testify before the grand jury

and his assertion of his Fifth Amendment constitutional privilege. Appellant, requesting further expungment, has appealed.

Appellant contends that the report accuses him of the crime of bribery.[1] Appellant raises other issues for our consideration; however, we perceive only one of them as meriting discussion, namely, whether a district court must review a grand jury report prior to its release. A related issue requires us to inquire into the scope and extent of a grand jury's reportorial authority. These issues are of considerable importance to the State's grand jury reportorial process. We turn now to consider them.

In Nevada, unlike many other jurisdictions, the grand jury has investigatory authority over diversified local governmental agencies and activities. NRS 172.175; Parus v. District Court, 42 Nev. 229, 174 P. 706 (1918). Specific legislative authorization for grand jury reports in Nevada was first enacted in 1943.[2] Today, the pertinent statute is NRS 172.175 which in relevant part provides:

> 2. The grand jury *may* inquire into and report on any and all matters affecting the morals, health and general welfare of the inhabitants of the county, or any administrative division thereof, or of any township, incorporated city, irrigation district or town therein. [Emphasis added.]

The authority of a grand jury to investigate matters pertaining to the public welfare, morals, or safety of the community is restrained only by NRS 172.175(3), which provides:

> 3. No report issued pursuant to this section shall single out any person or persons which directly or by innuendo, imputation, or otherwise accuses such person or persons

---

[1]NRS 197.020 states:

Every person who shall give, offer or promise, directily or indirectly, any compensation, gratuity or reward to a person executing any of the functions of a public officer other than as specified in NRS 197.010, 199.010 and 218.590, with intent to influence him with respect to any act, decision, vote or other proceeding in the exercise of his powers or functions, shall be punished by imprisonment in the state prison for not less than 1 year nor more than 10 years, and may be further punished by a fine of not more than $5,000.

[2]See NCL, 1943–49 Supp. 787 (1950); 1943 Stats. Nev. at 228–29.

The power to report may have been contained in the first compilation of Nevada law. Bonnifield and Healy's 1873 edition of the Compiled Laws, Volume I at Section 1835, shows that Nevada grand juries have historically been directed to inquire into the condition of prisoners and prisons and into the willful and corrupt misconduct in office of public officers.

of a wrongdoing which if true would constitute an indictable offense unless the report is accompanied by a presentment or indictment of such person or persons. At the time any grand jury is impaneled, the provisions of this subsection shall be included in the charge to such grand jury.

Respondent argues that there is no compelling justification to judicially restrain the efforts of the grand jury where the legislature has intentionally or inadvertently refrained. Compare Wood v. Hughes, 173 N.E.2d 21 (N.Y. 1961); but see Re Investigation of South Mall Financing, 330 N.Y.S.2d 170 (N.Y. 1972), cf. People v. Superior Court of Santa Barbara County, 531 P.2d 761 (Cal. 1975). We disagree.

While the return of either a presentment or indictment is *expressly required* by statute to be made to the district court (NRS 172.115, 172.125), there is no such express mandate regarding a report on matters affecting the morals, health, and general welfare of the community. However, according to NRS 172.175(3), if this report in effect accuses an individual of an indictable offense, the report must be accompanied by an indictment or presentment, both of which must be filed with the court.

While it would appear quite obvious that a report pursuant to NRS 172.175 will be filed with the court as a matter of routine, the significance is the silence of the statute with respect to reports but not to presentments or indictments. This significance is magnified when the court is asked to impose a requirement of pre-release review.

It is, of course, our prerogative to interpret NRS 172.175 as allowing the district court the power to refuse to file reports which exceed the grand jury's authority. See People v. Superior Court of Santa Barbara County, *supra*. There, the district attorney sought a writ of prohibition restraining the trial court from reviewing the grand jury report prior to filing.

In a sharply split decision, the California Supreme Court held that the trial court had the power of limited review to insure that the grand jury not exceed its authority.

> As in so many other instances, we face here competing values; the value of the protection of the public through the unrestricted power of the grand jury to probe and expose the operations of government, as opposed to the value of the protection of the individual from unlawful and unauthorized conduct of that tribunal. Although we recognize the advantage of a wider range in the grand jury's investigatory authority, we do not accept the

extreme position that such authority is absolute or that its sweep is so extensive that under any and all circumstances its proposed reports may be publicized. *Id.,* at 769.

Although no Nevada statute expressly permits even limited judicial review, we elect to follow the lead of the California Supreme Court. To us, judicial review to determine the excess of established legal limits is implicit in legislation defining the grand jury's subject matter jurisdiction, is confirmed in the common law (see In re Presentment of Camden County Grand Jury, 89 A.2d 416 (N.J. 1952); State v. Wurdeman, 187 S.W. 257 (Mo. 1916), see generally Kuh, The Grand Jury "Presentment": Foul Blow or Fair Play? 55 Colum. L.Rev. 1103, 1132 (1955)), and, here, is mandated by the trial court's own instructions given during the body's organizational meeting in 1974.[3]

Grand juries have traditionally been within the control of the courts, In re Grand Jury Subpoena to Central States, 225 F.Supp. 923 (N.D. Ill. 1964); In re Ormsby Grand Jury, 74 Nev. 80, 322 P.2d 1099 (1958); and the trial judge should exercise his powers when appropriate. United States v. Doulin, 538 F.2d 466 (2d Cir. 1976), cert. denied, 429 U.S. 895. Moreover, our constitutional and statutory scheme contemplate reasonable judicial control of our grand juries. Thus, the court presides at the impanellment of the grand jury (Art. 6, § 5, Nev.

---

[3]Instruction No. 12 provided in part:

A Grand Jury cannot forage at will upon any whim it may entertain. *Your geographical jurisdiction is Washoe County.* Therefore, you are not permitted to investigate any matters or situations of a statewide or national character.

In any written report you should not administer a reprimand or condemnation of any person or persons for failure to meet the standards fixed by your own ethical or moral views, the violation of which are not crimes or public offenses under the laws of this state. The reason for this rule is that such a report gives the individual named, or designated, no opportunity to reply or defend himself as he could do at his trial if you found and issued against him an Indictment for the commission of a crime. [Emphasis added.]

In an attempt to define the procedural method in which a grand jury report under NRS 172.175 must issue, the court gave Instruction No. 14 which in part provided:

Under the provisions of this statute, you must inquire into misconduct in office of public officials of every description within the county, save and except the courts. The reason for this rule is that the *Grand Jury is empaneled by the court and must report its findings only to the court.* [Emphasis added.] In many respects, the Grand Jury is a part of the Judiciary and, therefore, cannot investigate the governmental entity under which the Grand Jury functions. The law provides other means for the investigation and correction of irregularities in the conduct of Judges.

Const.; NRS 6.110–140), receives presentments and indictments (Art. 6, § 5, Nev. Const.; NRS 172.255, 172.285), determines when a grand jury shall be impanelled (NRS 6.110, 6.130), charges the grand jury as to its authorities and responsibilities (NRS 172.095), and determines when a grand jury is to be discharged, recessed (NRS 6.145), or a juror excused (NRS 172.275). Accordingly, we hold the district court has the limited power to review reports of grand juries within its jurisdiction prior to publication.

This limitation will not unduly interfere with the grand jury's reportorial authority, since the trial judge simply will be reviewing the proposed report to determine whether the jury, one of it appendages, has acted not just irresponsibly, but unlawfully. Of course, the judiciary will refrain from interfering unduly with the grand jury during the investigatory stage of its work, whether the investigation is reportorial or inquisitorial or both in nature.[4] Compare United States v. United States District Court, 238 F.2d 713 (4th Cir. 1956), cert. denied, 352 U.S. 981. Thus the judgmental independence of the grand jury will continue, with the district court having "no authority either to impose its own views on the grand jury or to suppress a report simply because it considers it ill-advised, insufficiently documented or even libelous." People v. Superior Court of Santa Barbara County, *supra,* at 766. Trial court prefiling review is consistent with the concept of judicial economy, since it will avert post-filing expungment proceedings or, at least minimize the scope and extent of such proceedings.

Appellant's argument is that, without some restriction by the courts on the content of a grand jury report, individuals cannot adequately defend themselves. As a matter of fairness, it seems sufficient that appellant in this case was given an opportunity to testify and present evidence for consideration by the grand jury. The report presumptively was made in the public interest. Here, as Mr. Conforte was inextricably involved with public officials and matters of significant public concern, such involvement was appropriately directed to the community's attention. Appellant was not accused of any crime or publicly condemned without indictment. Appeal of William Gregory, 77 Nev. 290, 362 P.2d 447 (1961). The report was in part an exposé relating to the purchase of land by Conforte and his attempt to sell a portion of it to a local governmental agency while profiting on the remainder of the property. The report evidenced that some

---

[4]A district court's suppression in whole or in part, of a legally valid grand jury report is, of course, subject to appellate review. NRAP 3 A(b)(1).

local governmental officials favoring the purchase from Conforte were regularly entertained without charge at Conforte's Mustang brothel. Compare In Re Presentment By Camden County Grand Jury, 169 A.2d 465 (1961). The report generally thus detailed factual matters and is not properly subject to expungment. In re Ormsby Grand Jury, *supra*. If a grand jury has gone beyond its express authority, expungment is the proper remedy. Appeal of Gregory, *supra;* Clemmons v. State, 141 So.2d 749 (Fla.App. 1962). Here, the report was generally issued in the legitimate community interest, and Conforte, with one exception, has not demonstrated that justice requires further expungement.

■■■ ■ ■

Touching once again on the scope and extent of grand jury reportorial authority, In re Ormsby Grand Jury, *supra,* at 85, 322 P.2d at 1102, held:

> There are limits to its reportorial power, however. Such power to *report upon public affairs* must be distinguished from the power to *accuse of public offense,* which by statute is accomplished by indictment or presentment. The grand jury has no power, where the law is silent, to declare certain acts to be public offenses through the fixing of standards in accordance with its ethical or moral views.

The legislative grant to grand juries of the authority to investigate and report "on any and all matters affecting the morals, health and general welfare of the inhabitants of the county" was not an unchecked opportunity by which a grand jury could make adverse findings, conclusions and recommendations concerning acts, omissions or practices, which although not expressly forbidden by law, were immoral and therefore subject to censure. Moreover, the proper territorial scope of any grand jury investigation is limited to the county in which it is impaneled. NRS 172.175(2). Accordingly, we find that the grand jury exceeded its statutory authority relative to its reference to appellant's purported Libby, Montana activities. However, notwithstanding the fact that the district court was not afforded the opportunity to preview the instant report, the grand jury generally acted within its province.

We hold that the district court properly denied expungement of the remaining portions of the grand jury report, with the exception of the reference to the Libby, Montana matter, and as to that portion, we remand for modification by the district court of its findings, conclusion and judgment and for expungement of page 29, lines 17–28; page 30, lines 1–4.

Appellant's claim that the reporting statute is vague and overbroad, that he was denied equal protection, that the secrecy provisions of the Nevada Revised Statutes were violated, and that the reportorial functions of the grand jury violate the separation of powers doctrine are all without merit.

Affirmed as modified with instructions.

MOWBRAY, C. J., and FONDI, D. J.,[5] concur.

BATJER, J., concurring in part and dissenting in part:

I respectfully dissent from that part of the majority opinion which states: "It is, of course, our prerogative to interpret NRS 172.175 as allowing the district court the power to refuse to file reports which exceed the grand jury's authority.", and from the holding of the majority that "the district court has the limited power to review reports of grand juries within its jurisdiction prior to publication".

The majority concedes there is no statutory authority requiring or authorizing a district court to review reports of grand juries prior to publication and relies heavily upon People v. Superior Court of Santa Barbara County, 531 P.2d 761 (Cal. 1975) in reaching its holding. A close examination of the California cases decided prior to *Santa Barbara County* reveal none holding or suggesting that a right exists in a judge to subject the report of a grand jury to prior judicial censorship and approval.

As Justice Stanley Mosk wrote in his dissent in *Santa Barbara County:*

> "Indeed, no statute gives to a court the duty or right to investigate or report on county or other governmental affairs. Nevertheless the ability to suppress the whole, or to excise parts, of a report, in effect places with the court responsibility over the investigating and reporting of matters entirely extraneous to the judicial function. By authorizing this procedure, the majority thrust the court into the maelstrom of local government controversy. For if the court may suppress reports with which it finds fault, a failure to suppress will be deemed approval.
>
> The proper course is the traditional course. The grand jury may file its report—with the court only because the law directs that to be the resting place—and the grand jury alone assumes the responsibility for content. If there is to

---

[5]The Governor designated Michael Fondi, Judge of the First Judicial District, to sit in the place of THE HONORABLE GORDON THOMPSON, Justice, who was disqualified. Nev. Const. art. 6, § 4.

be any prior restraint on the grand jury, its work or its work product, the Legislature must authorize it.''

Neither by direct order nor by the suppression of a report should a court prevent a grand jury from expressing views on subjects the court might believe improper.

As a result of the majority opinion, this Court is in effect expanding the jurisdiction of the district courts and diminishing the jurisdiction of the grand jury.

I would deny all district courts the power to review prior to publication the reports of grand juries within their jurisdiction.

I concur with the remainder of the majority opinion.

GUNDERSON, J., concurring and dissenting:

I agree with JUSTICE BATJER's view that district courts have no lawful franchise to censor grand jury reports before they are filed and made public. I also agree that this court has no lawful franchise to interject one person, a district judge, between the public's right to know and evaluate a grand jury's actions. If citizens, on occasion, believe that a particular grand jury has exceeded its lawful authority, then I submit it is more appropriate to require the persons thus arguably aggrieved to present their contentions, as was done in this case, through public proceedings for expungement. We should not constitute district judges the final censors of the public issues considered by grand juries, in closed proceedings forever veiled in secrecy.

In the instant case, I can agree that the grand jury exceeded its lawful authority, in dwelling on activities in the state of Montana. Also, without indicting those accused, the grand jury rather clearly implied that criminal conduct occurred during the association of public officials and the petitioner. Thus, in my view, although the district court did not have authority to restrain the grand jury from announcing their views on such matters, the petitioner is entitled to have such views declared to be in excess of the jury's lawful authority.