**UNITED STATES of America,**

v.

**John GOTTI, et al., Defendants.**

**No. 85 CR 178.**

United States District Court, E.D. New York.

Oct. 2, 1986.

Andrew J. Maloney, U.S. Atty. (Diane F. Giacalone, John Gleeson, Asst. U.S. Attys., of counsel), Brooklyn, N.Y., for the U.S.

Slotnick & Cutler (Bruce Cutler, of counsel), New York City, for defendant John Gotti.

Slotnick & Cutler (Barry I. Slotnick, of counsel), New York City, for defendant John Carneglia.

Hoffman, Pollok & Gasthalter (Jeffrey C. Hoffman, of counsel), New York City, for defendant Eugene Gotti.

Richard A. Rehbock, New York City, for defendant Wilfred Johnson.

David DePetris, New York City, for defendant Anthony Rampino.

Michael L. Santangelo, New York City, for defendant Leonard DiMaria.

George Santangelo, New York City, for defendant Nicholas Corozzo.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Defendants have asked the court to rule inadmissible certain tapes of conversations recorded in the house of Aniello Dellacroce, a defendant named in the indictment but now deceased.

The indictment, filed March 25, 1985 and alleging violations of the so-called RICO statute, 18 U.S.C. §§ 1962(c) and 1962(d), charged ten defendants with participating and conspiring to participate in the affairs of an "enterprise" through a pattern of racketeering activity. The racketeering acts alleged are theft, illegal gambling, extortion, robbery, trafficking in contraband cigarettes, and acts and threats involving murder and robbery.

The indictment recites in its introduction, in substance, that the "Gambino Organized Crime Family" is an hierarchical organization which managed and supervised illegal activities generating money and other economic advantage, and that Paul Castellano is the "boss" of the Gambino Family and Aniello Dellacroce the "underboss" who supervised certain of the Gambino Family's "crews," each headed by a "capo" or "captain." The alleged "enterprise" is said to be a "segment" of the Gambino Family and to consist of Dellacroce as supervisor and two crews, one run by Charles Fatico and later defendant John Gotti, assisted by his "lieutenant" Angelo Ruggiero (not named as a defendant), the other run by defendants Leonard DiMaria and Nicholas Corozzo.

Count one charges that the defendants conspired to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Count two charges that the defendants conducted and participated in the conduct of the affairs of the enterprise by committing the racketeering acts. There are now seven defendants, Dellacroce having died, an-

other defendant being a fugitive, and a third having pleaded guilty and then fled.

The government proposes to offer tapes of four conversations intercepted at Dellacroce's house in June 1985, after the filing of the indictment. According to the government all four conversations concern chiefly Dellacroce's expulsion of Michael Caiazza (not named as a defendant) from the Gambino Family. Caiazza had been named by Dellacroce some years earlier as the capo of a crew other than the two referred to in the indictment.

The chief participants in the first conversation, held on June 3, 1985, are Dellacroce, Ruggiero, and Caiazza. The transcript shows that Caiazza before going into the hospital for treatment had named as acting captain Joseph (Buddy) LaForte, Jr. (whose father, apparently not on good terms with his son, is also present at the conversation). Before doing this Caiazza had not checked with Dellacroce but had consulted directly with Paul Castellano.

Both Dellacroce and Ruggiero rebuke Caiazza for not respecting Dellacroce's position. Finally Dellacroce tells Caiazza he has no more authority in the Gambino Family and is expelled from it.

The second conversation, held on June 6, 1985, is between Dellacroce and Ruggiero. Much of this conversation relates to persons apparently not immediately involved in the Caiazza incident. The participants make several references to the need to obey the "underboss," to "Paul" (evidently Castellano), and to Joe Gallo, Jimmy Brown, Paulie Vario, Joe Bruster, John Carneglia, Tommy Bilotti, Mike Tally, Frank DeCicco, and others. In the absence of explanation many of the references are obscure to the court. Ruggiero appears to be reporting to Dellacroce on occurrences and activities within the Gambino Family. Some of the conversation apparently refers to Caiazza and to Joseph LaForte, Jr., to their future relationship with the Gambino Family, and to Ruggiero's telling others in the Gambino Family of Dellacroce's decision as to Caiazza.

In the third conversation, occurring on June 9, 1986, Dellacroce, Ruggiero, and Jimmy Failla (not named as a defendant) participate. Dellacroce informs Failla of Caiazza's expulsion from the Family and tells Failla to have nothing to do with Caiazza and to tell others of the expulsion.

The fourth conversation, also on June 9, 1986, is between Dellacroce, Ruggiero, and Joseph LaForte, Sr. (not named as a defendant). The three take turns criticizing Joseph LaForte, Jr. for what he did to Dellacroce and to his father, evidently by undertaking to assume the position of an acting captain. They also discuss what could have been done, as well as what should or should not be done or said, to Joseph LaForte, Jr. They also talk about the murder of James McBratney some years earlier.

I

■ The admissibility of the statements made in the taped conversations depends first on their relevancy, that is, whether they have "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be" without the statements. Rule 401 of the Federal Rules of Evidence.

In order to prove the existence and nature of the "enterprise" and the alleged conspiracy between the defendants the government may introduce evidence of the existence, hierarchy and structure of the so-called Gambino Family, of which the indictment alleges the "enterprise" was a segment. Many of the statements made in the conversations bear on these matters. The recognition of the titles of "boss," "underboss," and "capo," and the identification of individuals who occupy these positions, are relevant. Dellacroce's expulsion of Caiazza from the Gambino Family is pertinent to show Dellacroce's position as supervisor of the defendants' activities. The same may be said as to Dellacroce's directions to others as to how to cope with Caiazza and Joseph LaForte, Jr.

Defendants claim the statements made in June 1985 are not relevant because the indictment alleges the conspiracy to have continued "up to and including December 1984." However, a conspiracy once initiated continues to exist until it is abandoned or otherwise terminated by some affirmative act. *See United States v. Rucker,* 586 F.2d 899, 906 (2d Cir.1978). The government claims that the conspiracy charged continued after the date of the indictment. Defendants' papers do not suggest that whatever activities they and their associates engaged in prior to December 1984 came to a halt with the filing of the indictment. The jury thus may find that an elaborate organization with a formal hierarchical structure existing in June 1985 existed in December 1984.

## II

The government seeks to offer the conversations as containing statements "not hearsay" because made "by a co-conspirator of a party during the course and in furtherance of the conspiracy" within the meaning of Rule 801(d)(2)(E) of the Federal Rules of Evidence.

Defendants urge the court to exclude statements made after December 1984, the date to which the conspiracy is alleged to have continued, because they were not made "during the course" of the conspiracy charged.

As noted, the government says the evidence will show that the conspiracy continued after December 1984. But in any event the conspiracy to which Rule 801(d)(2)(E) refers need not be the identical conspiracy charged in the indictment. At least provided there is proof, relevant in the case, of some related conspiracy in which defendants were members at the time of the statements, they are made "during the course" of a conspiracy for purposes of the rule. *See United States v. Lyles,* 593 F.2d 182, 194 (2d Cir.), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979); *see also United States v. Cambindo Valencia,* 609 F.2d 603, 635–36, n. 25 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980). A conspiracy need not even be alleged in the indictment. *See, e.g., United States v. Doulin,* 538 F.2d 466, 471 (2d Cir.), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976); *United States v. Ruggiero,* 472 F.2d 599, 607 (2d Cir.), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973).

Defendants similarly contend that the statements are inadmissible because not in "furtherance" of the conspiracy charged because it is restricted to the two "crews" plus Dellacroce. Defendants point out that Caiazza was not a member of one of those two crews. Even assuming *arguendo* that the conversations did not further the conspiracy charged, although Ruggiero was a member of one of the two crews, the court holds that this contention fails for the reasons already given.

The government need not prove that the participants in the taped conversations were all members of the "segment" of the Gambino Family alleged to constitute the conspiracy charged. The government may prove that defendants and the persons taped were part of a larger conspiracy encompassing the entire Gambino Family, of which the defendants constituting the "enterprise" were but a part. If the other prerequisites of the rule are fulfilled with respect to that larger conspiracy, statements relevant to the case and made "in furtherance" of the larger conspiracy are admissible.

As the Court of Appeals for the Second Circuit has recently held, the "in furtherance" requirement of the rule, while not met by a mere narrative by one coconspirator of the facts of another's past activities, is satisfied when a coconspirator is apprised of the progress of the conspiracy or when the statements are designed to induce his assistance. *United States v. Heinemann,* 801 F.2d 86, 95–96 (2d Cir. 1986).

To the extent that the conversations bear upon the expulsion of Caiazza and the need to enforce discipline within the hier-

archy of the Gambino Family they are in furtherance of the larger conspiracy. So too are accounts of what steps could and should have been and could and should be taken to inform Gambino Family members and associates of the Caiazza and LaForte situation, its rectification, and the expulsion of Caiazza. At least these parts of all four taped conversations are admissible as coconspirator statements.

 The tape of one of the conversations shows a coconspirator statement of Ruggiero that John Gotti had said to him that it is "an administrative thing" that Dellacroce should know of the interim appointment by Caiazza. This statement of Gotti is also a coconspirator statement and not hearsay, within the definition of Rule 801(d)(2)(E). While Rule 805, providing for the admission of hearsay within hearsay, does not in terms apply, the same criteria should apply to the admissibility of one extrajudicial statement within another. *See* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 805[1] (1985). The statement of John Gotti will therefore be admitted.

Other portions of the tapes may or may not be admissible as coconspirator statements depending on whether or not the government satisfies the court that the criteria set forth in the *Heinemann* case are met. The court will make rulings at trial on these issues.

### III

 The government urges that various statements in the conversations are admissible under Rule 804(b)(3) of the Federal Rules of Evidence. That rule provides, in pertinent part, that among the statements not excluded by the hearsay rule if the declarant is unavailable as a witness is

"A statement which ... so far tended to subject him to ... criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true."

As the court reads the rule it requires the court not only to determine what a reasonable man in the declarant's position "believed" but also that his decision to make the statement was made after weighing the possibility that its utterance would subject him to criminal liability. In ordinary circumstances there is a strong motivation to remain silent. In other words it is the threat of potential criminal prosecution that lends trustworthiness to the statement. If that reading is correct, it is irrelevant that other circumstances may also bear on the reliability of the statement.

Where the government alleges that most of the activities of the declarants and their close associates in an organization are devoted to criminal ends, it seems unlikely that they would give weight to the chances of prosecution when talking to those associates. This is particularly so if, as the government claims, the organization is tightly knit and opportunity for advancement within it is dependent on the commission of crime.

For these reasons the court, were it deciding the matter in the absence of controlling authority, would hold the statements on the tapes inadmissible under Rule 804(b)(3). However, the court can find no meaningful distinction between this case and the language and decisions of the Court of Appeals for the Second Circuit, specifically *United States v. Paone*, 782 F.2d 386, 390–91 (2d Cir.1986) and *United States v. Lang*, 589 F.2d 92, 97 (2d Cir. 1978). If, as the *Lang* case held, a statement made to someone the declarant believed to be a coconspirator was admissible under Rule 804(b)(3) even though the declarant "might not so readily have perceived the disserving character of what was said nor have expected his words to be repeated to the police," *Lang, supra* (quoting *United States v. Barrett*, 539 F.2d 244, 251 (1st Cir.1976) ), the statements at issue here tending to subject the declarant to criminal liability are also admissible under that rule. The question whether some of the statements should be excluded under Rule 403 must await trial.

## IV

The government urges also that the act of expelling Caiazza and the instructions to others not to deal with him were verbal acts probative of the conspiracy and not subject to the hearsay rule. Since these specific statements are not offered for the truth of what is stated, no hearsay problem arises. To the extent other statements on the tapes are properly offered on the same theory and contain unduly prejudicial assertions of fact the court will entertain at trial applications to exclude under Rule 403.

So ordered.